No. 87-509

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

SCOTT A. WOMBOLT,

Defendant and Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Honorable Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Charles A. Bradley, Deputy County Attorney

For Respondent:

Arthur J. Thompson; Thompson and Sessions,
Billings, Montana

Submitted on Briefs:   March 24, 1988

Decided:   April 21, 1988

Filed:   APR 21 1988

*Ethel M. Therriault*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State appeals from an order of the District Court of the Thirteenth Judicial District, County of Yellowstone, dismissing an information charging defendant/respondent Scott A. Wombolt (Wombolt) with arson. The dismissal was based on failure to provide a speedy trial. We affirm.

The State raises but one issue:

Did the District Court abuse its discretion in granting Wombolt's motion to dismiss for failure to provide a speedy trial?

Wombolt was arrested and jailed on March 27, 1987. He was charged with the crime of felony arson. A preliminary hearing was scheduled for April 16, 1987 when Wombolt appeared in justice court on March 31, 1987. At the March 31 hearing, and before any examination began, Wombolt invoked his statutory right to close the proceedings to the press and public pursuant to § 46-10-201, MCA. Accordingly, the court closed the preliminary examination to the public and press.

The Billings Gazette (Gazette) commenced a series of legal proceedings, ultimately culminating in an August 5, 1987, Federal District Court ruling that the closure statute was unconstitutional. Therefore, the preliminary examination did not occur until August 25, 1987. The State filed an information in District Court on September 1, 1987 and trial was set for October 27, 1987. Defendant asserted his right to a speedy trial at an October 2, 1987 omnibus hearing. Wombolt formally moved the court for dismissal of the action on October 5, 1987 and argued that he had previously made five unsuccessful attempts to have his bail reduced. The court entered it order of dismissal on October 23, 1987. As the District Court noted, Wombolt would have commenced his

2

214th day of incarceration on October 27, 1987, the scheduled date of trial.

The law in this area is clear. Our most recent statement was in State v. Waters (Mont. 1987), 743 P.2d 617, 619, 44 St.Rep. 1705, 1707-1708:

> Any person accused of a crime is guaranteed the right to a speedy trial by the Sixth Amendment to the United States Constitution and Art. II, § 24 of the Montana Constitution. The right to a speedy trial is fundamental. It attaches when a defendant is accused of a crime, State v. Ackley (1982), 201 Mont. 252, 255, 653 P.2d 851, 853, but the nature of the right precludes establishing a time period cast in stone as determinative.

> The right of a speedy trial is necessarily relative. It is consistent with delays and depends on circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

> Beavers v. Haubert (1905), 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed.2d 950, 954. Thus, any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case.

> Consistent with the amorphous quality of the right, the United States Supreme Court established a four-pronged balancing test to determine speedy trial claims in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. This Court has adopted the Barker test as stated in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-4:

> These cases involve a sensitive balancing of four factors, in which the conduct of the prosecution and defendant are weighed in determining whether there has been a denial of the right to a

3

speedy trial. The four factors to be evaluated and balanced are:

1) Length of delay;

2) Reason for delay;

3) Assertion of the right by defendant; and

4) Prejudice.

No single factor is determinative. Each facet of the analysis is weighed in light of the surrounding facts and circumstances.

In speedy trial analysis, the length of delay acts as a "triggering" mechanism and the other above enunciated factors need not be examined unless presumptive prejudicial delay is present. State v. Harvey (1979), 184 Mont. 423, 433, 603 P.2d 661, 667. The State argued only 56 days expired between the filing of the information and the trial date. The District Court properly dispelled this claim stating the right to speedy trial attaches at arrest or the filing of the complaint in justice court. State v. Larson (Mont. 1981), 623 P.2d 954, 957, 38 St.Rep. 213, 215. The delay in this case would have been 214 days. It is indisputable that this length of time is sufficient to trigger a speedy trial examination. State v. Palmer (Mont. 1986), 723 P.2d 956, 43 St.Rep. 1503 (256 days); State v. Chavez (Mont. 1984), 691 P.2d 1365, 41 St.Rep. 2219 (214 days); State v. Ackley (1982), 201 Mont. 252, 653 P.2d 851 (257 days); State v. Cassidy (1978), 176 Mont. 385, 578 P.2d 735 (246 days).

This delay gives rise to a rebuttable presumption of prejudice. The State therefore, in order to rebut this presumption, has an affirmative duty to come forward with evidence showing Wombolt was not prejudiced by the delay and show there was a reasonable excuse. Waters, 743 P.2d at 619.

4

The State's burden was not met in this case to rebut the presumption of prejudice. This length, 214 days, leads us to the second Barker factor, reason for delay. The State claimed the delay was "institutional" and therefore not chargeable to the State. "Although institutional delay weighs less heavily against the State, it is the policy of this Court to gradually reduce our tolerance for this excuse . . . " Chavez, supra, 691 P.2d at 1370. Nevertheless, institutional delay still must be considered by this Court: "[d]elay inherent in the system . . . chargeable to the State." Ackley, supra, 201 Mont. at 256, 653 P.2d at 853-854; citing, State v. Harvey (1979), 184 Mont. 423, 434, 603 P.2d 661, 667. As the District Court appropriately pointed out, the institutional delay in this case was caused by the "Gazette suit, and the State's inaction in the face of that suit."

Here, the State had the alternative to proceed with the filing of the information in the District Court. State ex rel. Brackman v. District Court (1977), 172 Mont. 24, 28, 560 P.2d 523, 526. Although the State properly asserts that it has the power to choose the method of commencement of prosecution, the District Court appropriately pointed out "concomitant with this discretion, however, is the duty to bring the accused to trial." Citing, Larson, supra, 623 P.2d 954. Here, the State held Wombolt in custody without proceeding with the motion for leave to file an information. Therefore, although institutional, the delay was still chargeable to the State. The State has the responsibility to bring the accused to trial, it is not the duty of the accused to bring himself to trial. This responsibility was clearly not met. Larson, supra, 623 P.2d at 958.

The third factor involved in this analysis is Wombolt's assertion of the right. Wombolt properly asserted this right

5

prior to trial at the omnibus hearing, October 2, 1987. This factor is met when the denial of speedy trial is put before the court prior to the commencement of trial. Waters, supra, 743 P.2d at 620; State v. Steward (1975), 168 Mont. 385, 390, 543 P.2d 178, 182.

The final factor involved requires an analysis of whether the defendant was prejudiced.

> "Prejudice is determined by examining the defendant's interest in a speedy trial. These interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and, (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118."

Waters, supra, 743 P.2d at 620. Here, a review of the District Court's order of October 23, 1987, disposes of any argument the State can present in regard to the prejudice Wombolt suffered:

> The State does not address the first interest, the prevention of oppressive incarceration. The Supreme Court discussed the prejudicial effect of incarceration in Barker:
>
> "We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means the loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing

6

those consequences on anyone who has not yet been convicted is serious * * * "

92 S.Ct. at 2193. The State has failed to demonstrate that Defendant's incarceration was not oppressive.

The State does not address the second interest, the minimization of anxiety. In State v. Britton, -- Mont. --, 689 P.2d 1256, 41 St.Rep. 2018 (1984), the Montana Supreme Court held that a criminal Defendant's anxiety over a "potential loss of liberty because of a criminal conviction" was significant. 41 St.Rep. at 2022. There, Defendant was released on his own recognizance after his first appearance in Justice Court. The criminal charges against him were pending for over a year before he was brought to trial. Id. It cannot be conscientiously argued that the degree of anxiety and concern experienced by Britton regarding his potential loss of liberty in any way outweighs Defendant Wombolt's anxiety and concern caused by his actual loss of liberty.

The Court must next consider whether the accused defense has been impaired by the delay. As noted above, oppressive incarceration hinders the preparation of a defense. Barker, supra. Further, witnesses may die, suffer memory lapses, and physical evidence may vanish. State v. Larson, 623 P.2d at 959. The Defendant is not required to affirmatively prove prejudice; the State must come forward with some evidence that outweighs the presumption of prejudice. Chavez, 41 St.Rep. at 2223. Here, the State asserts only that the witnesses "are still alive, present and able to testify". Such a statement, without more, is insufficient to carry the State's burden. Thus, the State fails to show that Defendant was not prejudiced by the delay.

7

The State argues on this appeal that Wombolt admitted he could not prove prejudice and therefore the State should be entitled to the advantage of this admission as part of its burden to overcome prejudice. However, from the above recitation of the District Court's ruling, it is clear that the State alleges only that witnesses "are still alive, present and able to testify." This argument pales in light of Wombolt's incarceration of over 200 days.

Upon consideration of the Barker factors and the circumstances of this case, we have no alternative than to determine that there was excessive delay on the part of the prosecution with no justification. Wombolt timely asserted his right to a speedy trial.

The judgment of the District Court is affirmed.

L. C. Gulbrandson

We concur:

J. A. Turnage
Chief Justice

John Conway Harrison

John C. Sheehy

William E. Hunt

R. C. McDonough
Justices

8