No. 89-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

HAL J. BUCKINGHAM,

       Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District
         In and for the County of Yellowstone,
         The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Brad J. Arndorfer, Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Paul D. Johnson, Asst. Atty. General, Helena
        Harold Hanser, County Attorney; Curtis Bevolden, Deputy
        County Atty., Billings, Montana

Submitted on Briefs: Oct. 13, 1989

Decided: December 14, 1989

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, Hal J. Buckingham, was charged in the District Court of the Thirteenth Judicial District, Yellowstone County, with felony assault pursuant to § 45-5-202(2)(b), MCA, for firing a shotgun at a car driven by Jay Popp. The jury found defendant guilty as charged. He was sentenced to five years imprisonment in the Montana State Prison and fined $500.00. The prison sentence was suspended. Defendant appeals. We affirm.

The issues before us on appeal are:

1. Was the State's motion for leave to file an information supported by probable cause?

2. Was the defendant denied his right to a speedy trial?

3. Did the District Court err in denying defendant's motion in limine?

4. Was the jury's verdict supported by substantial evidence?

On the evening of February 29, 1988, Billings police officer Irvan Floth investigated a report of a firearm discharge at defendant's home. He examined a black, 12-gauge, Winchester Defender shotgun, with a pistol-style grip, an extended magazine and a serial number of L2037954. Floth testified that this particular type of gun was a defensive weapon capable of firing up to eight rounds without reloading. Defendant testified that he was "playing with the gun" when it accidentally fired, damaging a window. Because it was an accidental discharge, no citation was issued.

Later that same evening, about 10:30 p.m., while driving to his house, the victim, Jay Popp, noticed a vehicle parked in his driveway with its lights shining on his house. As Popp approached, the other car suddenly pulled out and sped

off. Popp pursued the car in a high-speed chase. Suddenly the vehicle Popp was chasing turned 90 degrees in the roadway and stopped. As Popp approached, someone from the other car shot at him. A piece of glass from the windshield hit him in the neck. The shooting continued and in his fear, Popp hid on the floor of his car, making it difficult for Popp to get a detailed description of the car or his assailant. He testified that he saw that the gun was "a large gun," "a shotgun" and that the car "looked like some kind of a Rabbit, or small car like that," and a "dirty" "reddish color." He also testified that his assailant was a male. Popp was able to escape the scene by driving his car while sitting on the floor. He drove back toward his home until the car stalled as a result of damage done in the shooting. He made his way home and then reported the incident to the police.

Upon examination, the sheriff's department determined that there was extensive damage to the left front and front end of Popp's vehicle caused by shotgun pellets. Backtracking by following a track of radiator fluid, the deputy was able to verify Popp's story of what had happened. There were shotgun shells and a skid mark on the road where the assailant's car had come to a sudden stop, and glass and radiator fluid where Popp's car was shot.

A few days later, the sheriff's office responded to a call to pick up a shotgun which had been found in a ditch along the road in the area of the shooting. The shotgun bore the serial number L2037954, and was the same gun involved in the accidental discharge involving defendant. The gun was traced to the store that sold it. The store's books revealed it had been sold to defendant. The Montana State Crime Lab then analyzed the shells found at the scene of the shooting and established that the shells could only have been fired from defendant's shotgun.

3

The investigation disclosed that defendant owned an orange Volkswagen Rabbit. In March, about a week after the shooting incident, that car had gone over the edge of the cliffs near Billings.

An information was filed against defendant on April 29, 1988, charging him with felony assault pursuant to § 45-5-202(2)(b), MCA. On May 25, 1988, defendant filed a Motion to Dismiss alleging that the information failed to give probable cause to charge defendant with the crime of felony assault. The District Court determined that probable cause did exist and denied the motion.

Defendant was ordered to appear in court on October 6, 1988. Due to his failure to appear, a plea of not guilty was entered by the court on his behalf. Trial date was then set for December 5, 1988. On November 23, 1988, defendant moved to dismiss for lack of speedy trial due to the length of time between arrest and the date set for the entry of a plea. After defendant personally appeared with his attorney on November 29, 1988, and entered a plea of not guilty, his motion was denied.

A trial was held as scheduled and the jury found defendant guilty as charged. He then made motions to dismiss, motion for new trial or modification of verdict to not guilty. Again, the District Court denied his motions, concluding that there was substantial evidence to support the jury's verdict.

I

Was the State's motion for leave to file an information supported by probable cause?

Defendant contends that because this case was based on circumstantial evidence, the District Court abused its discretion in not holding a preliminary hearing, and there were not sufficient facts to justify filing the information. He

4

maintains that he was not identified, his vehicle was not identified, and "only the fact that it was his gun used in the commission of the crime" connected him to the offense. He asserts that a preliminary hearing would have shown an unwarranted prosecution. Defendant filed a motion to dismiss on the basis that there was not probable cause to support the information.

Relying on § 46-11-201, MCA, the State maintains that the information was proper and there was no abuse of discretion.

> The county attorney may apply directly to the district court for permission to file an information against a named defendant. The application must be by affidavit supported by such evidence as the judge may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant, the judge shall grant leave to file the information, otherwise the application shall be denied.

Section 46-11-201(1), MCA. See State v. Bradford (1984), 210 Mont. 130, 139, 683 P.2d 924, 928, 929. We agree.

The State need not demonstrate a prima facie case in the information but need only show probable cause to believe an offense has been committed. In Bradford, 683 P.2d at 929, we stated:

> Similarly, evidence to establish probable cause need not be as complete s the evidence necessary to establish guilt. (Citation omitted.) [T]he determination whether a motion to file an information is supported by probable cause is left to the sound discretion of the trial court. Thus, the scope of review is one of detecting abuse in the exercise of that discretion.

Defendant was charged with felony assault pursuant to § 45-5-202(2)(b), MCA. A person commits that offense if he purposely or knowingly causes reasonable apprehension of

5

serious bodily injury in another by use of a weapon. The facts set forth in the affidavit showed that the defendant accidentally discharged his shotgun in his home the night of the incident for which he was charged; the police were called to investigate and the serial number of his gun was reported; an hour and a half later, Popp was shot at by a male person from another car, causing considerable damage to Popp's car; Popp described the perpetrator's car as a dirty reddish-color, possibly a Rabbit and defendant's car fit that description; the shotgun shells collected at the scene were determined by experts to have been fired from defendant's gun; and defendant's gun was discovered in a ditch near where the shooting took place. We affirm the District Court's holding that the State's motion for leave to file an information was supported by probable cause.

## II

Was the defendant denied his right to a speedy trial?

Defendant contends that he was denied his right to a speedy trial, pointing out that 220 days elapsed from the date of his arrest to trial. He urges that a delay of 220 days gives rise to a rebuttable presumption of prejudice. He maintains that the reason for the delay was due to an oversight by the State in failing to set an arraignment date. Finally he urges that he was prejudiced by the delay due to the "faded" memories of the witnesses and the victim at the time of trial.

The State concedes that there was an oversight on its part regarding the setting of a date for arraignment. It maintains that there were 58 days chargeable to the defendant which must be deducted from the total delay. Thus, it is the State's position that only 162 of the 220 days are chargeable to the State, which does not constitute a sufficient length of time to raise a presumption of prejudice to the defendant.

6

It also contends that even if the 162-day delay is presumptively prejudicial, consideration of the reason for the delay and whether there was actual prejudice would excuse the delay. The reason for the delay was considered and explained at length by the District Court.

Both the Federal and State Constitutions guarantee defendant a right to a speedy trial. In determining the question of prejudice pursuant to Mont. Const., Art. II, Sec. 24, this Court analyzes and weighs four factors. State v. Wombolt (1988), 753 P.2d 330, 45 St.Rep. 714. The four factors are:

1. length of delay;
2. reason for the delay;
3. whether defendant asserted the right; and
4. whether defendant was prejudiced.

If the length of delay was not presumptively prejudicial, the other factors need not be examined. However, no single factor is determinative. See State v. Palmer (1986), 223 Mont. 25, 723 P.2d 956. As defendant asserts, there was a delay of 220 days in this case from the time of arrest to the time of trial. The length of this delay is enough to be presumptively prejudicial. State v. Waters (1987), 228 Mont. 490, 743 P.2d 617 (277 days); Palmer, 723 P.2d 956 (256 days); State v. Chavez (1984), 213 Mont. 434, 691 P.2d 1365 (214 days).

The second factor of the Wombolt test is the reason for delay. The burden is on the State to show there was a reasonable excuse for delay in bringing defendant to trial. State v. Cutner (1984), 214 Mont. 189, 692 P.2d 466. The District Court found that the reason for the delay was of significant importance in this case and stated:

7

> Through an oversight, the Defendant did not enter a plea in the case at bar. A delay of 154 days occurred between the time of Defendant's arrest and the State's filing of a motion to compel entry of plea . . . .
>
> The reason for the delay between arrest and date set for the entry of a plea (October 6, 1988), was an oversight by the State. The State and this Court assumed Defendant had entered a plea at the time the information was filed or shortly thereafter. According to the Montana Supreme Court in State v. Waters, . . . "The right to a speedy trial is designed to prevent oppressive tactics by the State." The 154 day delay, in the case at bar, was due to an oversight by the State. There is no evidence that the State engaged in bad faith or oppressive tactics, and the Defendant does not contend as much in his brief supporting his motion to dismiss for lack of speedy trial.

We agree with the District Court that there is a lack of any evidence of oppressive tactics by the State in this case.

The third factor to consider is whether the defendant asserted his right to a speedy trial. This was done when defendant filed his motion to dismiss before the trial date. See Wombolt (1988), 753 P.2d 330.

The fourth factor to consider is whether defendant was prejudiced by the delay. The District Court concluded that the defendant was not prejudiced by the delay and that although the delay between defendant's arrest and the State's motion to compel entry of plea was attributable to the State, defendant caused further delay himself by failing to appear and enter a plea. In Palmer, this Court identified the interests of a defendant which may be prejudiced by a delay. The interests are:

> (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532.

8

*Palmer*, 723 P.2d at 959. Oppressive pretrial incarceration was not a factor in this case. Furthermore, the record is devoid of any evidence that defendant suffered from anxiety and does not support defendant's argument that his defense was impaired. We affirm the District Court's conclusion that defendant was not denied his right to a speedy trial.

## III

Did the District Court err in denying defendant's motion in limine?

Defendant contends the District Court erred by denying his motion in limine to exclude photographs of defendant's car or any testimony regarding the car because Popp could not clearly identify or describe the car used in the crime. Defendant urges that Popp's own testimony proves that he was uncertain about what type of car was used in the crime or what it looked like. Popp testified that the car was "dirty. And it was kind of reddish color. I couldn't tell, although, it was so very dark." Defendant points out that Popp admitted seeing a Plymouth Horizon that he thought might be the vehicle involved and called the police about it.

The State maintains that the evidence was relevant pursuant to Rule 402, M.R.Evid. It contends that the photos together with Popp's testimony clearly tended to place defendant in the assailant's vehicle at the time of the shooting, and was therefore relevant. We agree.

Rule 401, M.R.Evid., defines relevant evidence as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant.

9

In Derenberger v. Lutey (1983), 207 Mont. 1, 9, 674 P.2d 485, 489, we stated the test is:

> ". . . whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered. The standard used to measure this acceptable probative value is 'any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence.' This standard rejects more stringent ones which call for evidence to make the fact or proposition for which it is offered more probable than any other. It is meant to allow wide admissibility of circumstantial evidence limited only by Rule 403 or other special relevancy rules in Article IV." (Citations omitted.)

Popp described the car as he remembered it and the photographs supported his testimony. It is for the trier of fact to decide whether it is the same car or not. We hold the District Court properly denied defendant's motion in limine.

IV

Was the jury's verdict supported by substantial evidence?

Defendant filed a motion for a new trial or a directed verdict pursuant to § 46-16-702, MCA. The District Court denied this motion. Defendant contends that the evidence was wholly circumstantial and implies that to be enough to leave a "reasonable doubt" in the minds of the jury. He therefore maintains that he should have been acquitted.

The standard of review on issues of substantial evidence is that the conviction cannot be overturned if evidence, when viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find essential elements of the crime beyond a reasonable doubt. State v. Tome (1987), 228 Mont. 398, 742 P.2d 479. The decision is within the sound discretion of the trial court and will not be

10

overturned absent a clear abuse of discretion. State v. Howie (1987), 228 Mont. 497, 744 P.2d 156. Circumstantial evidence alone is sufficient to obtain a conviction. It must only be of such a "quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt," and all the facts and circumstances must be considered collectively. State v. Weaver (1981), 195 Mont. 481, 637 P.2d 23. We hold that the evidence would allow a rational trier of fact to find the defendant guilty of felony assault beyond a reasonable doubt.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11