No. 89-331

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,
    Plaintiff and Respondent,
-vs-
WILLIAM JACK HALL,
    Defendant and Appellant.

*FILED*

AUG 2 0 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twelfth Judicial District,
                In and for the County of Hill,
                The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Daniel A. Boucher, Altman & Boucher, Havre, Montana

        For Respondent:

        Marc Racicot, Attorney General, John Paulson,
        Assistant Attorney General, Helena, Montana

        David G. Rice, Hill County Attorney, Patricia
        Jensen, Deputy County Attorney, Havre, Montana


                                    Submitted:  May 10, 1990

                                    Decided: August 20, 1990

Filed:

_____
            Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

A jury in the Twelfth Judicial District, Hill County, found defendant William Jack Hall guilty of sexual assault. He now appeals his conviction. We affirm.

The defendant raises four issues on appeal:

1. Whether the District Court erred in denying defendant's motion to dismiss for lack of a speedy trial.

2. Whether the District Court properly admitted defendant's statement concerning his acts at the scene of the crime.

3. Whether the District Court properly refused defendant's proposed jury instruction concerning eyewitness identification.

4. Whether the District Court improperly allowed expert testimony.

On July 21, 1988, six-year-old D.B. went to Havre-Hill County Public library with her mother and two brothers. After walking downstairs with the children to the children's section so that D.B. and her brothers could choose some books to check out for themselves, D.B.'s mother went upstairs to attend a meeting.

While D.B. was looking at books in the children's section, defendant approached D.B. and asked her to follow him into a periodical storage room. While inside the room, Hall had D.B. sit down on a chair. Hall then showed his penis to D.B. and touched D.B.'s leg with his penis. Hall asked D.B. to pull down her pants, but she refused. Defendant than reached his hand up inside D.B.'s shorts and touched her vagina and buttocks.

That evening D.B. told her mother about the incident in the

2

library.   D.B's mother reported the incident to officer Ross Magnuson of the Havre Police Department the following day. Magnuson examined the periodical room and found three hairs and a dried substance on the floor.

On July 30, 1988, Magnuson interviewed Hall.  Hall initially stated that he had not been in the library for quite a while.  When Magnuson informed Hall of the hair evidence found at the scene and that the police had obtained a search warrant to collect samples of his hair to compare with the evidence at the scene, Hall changed his story.  He explained that he had been in the library the day before the incident, had gone into the same periodical storage room, and became aroused by a picture he had found in a magazine. Hall stated that he then masturbated in the storage room. Subsequent analysis by both the F.B.I. and Hall's expert determined, however, that hairs found in the periodical storage room could not match Hall's hair sample.

On August 1, 1988, the State charged Hall, by complaint, with felony sexual assault.  Section 45-5-502(1), MCA.  The Justice of the Peace initially set bail at $7,500.  After receiving leave to file an information, on August 19, 1988, the State filed an information alleging Hall sexually assaulted D.B.  On August 26, 1988, Hall was arraigned in District Court, at which time the court reduced his bail to $4,000.  Hall was unable to post bail and remained incarcerated.

Subsequent to Hall's arraignment, the District Court set the trial for October 26, 1988.  On October 6, 1988, the State moved

3

to continue the trial date because the results of the trace evidence had not yet been received and Hall's expert would have insufficient time to examine the evidence. The court granted the State's motion. Later, the District Court reset the trial for December 12, 1988. Next on December 8, 1988, the parties entered a stipulation to continue the December 12, 1988 trial date. The stipulation was based on two grounds: 1) Hall's expert had recently suffered serious heart ailments and was temporarily unavailable and 2) the State had recently endorsed an expert witness for which there had not been any opportunity for exchange of discovery. Once again, on January 5, 1989, the District Court rescheduled the trial for February 22, 1989.

On January 26, 1989, Hall filed a motion in limine with the District Court requesting prohibition of the use of statements by Hall to officer Magnuson. The District Court granted Hall's motion, and ordered that the State could introduce evidence of defendant's presence in the library but not of defendant's acts as admitted in his statement. The District Court reasoned that evidence of those acts had little probative value, and were inflammatory and prejudicial.

Next, on February 16, 1989, Hall filed a motion to dismiss, based upon a failure to provide a speedy trial. The District Court denied Hall's motion.

The trial commenced on February 22, 1989. At trial D.B. and her brother J.B., age nine, identified Hall as the offender. Hall chose not to testify at trial. On February 25, 1989, a Hill County

4

jury found Hall guilty as charged.  Hall now appeals his conviction.

## I.

Whether the District Court erred in denying defendant's motion to dismiss for lack of a speedy trial.

The right of any defendant to a speedy trial is guaranteed by the federal and Montana Constitutions.  U.S. Const., Amend. VI; Art. II, § 24, Mont. Const.; State v. Fife (Mont. 1981), 632 P.2d 712, 714.

The United States Supreme Court in Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct 2182, 2192, 33 L.Ed.2d 101, 117, established a four-pronged balancing test to determine speedy trial claims. In Montana, when a speedy trial issue is presented to the District Court, the court must resolve the issuing by applying the balancing test of Barker.  Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64.  The four factors to be evaluated and balanced are:

1)  length of delay;

2)  reason for delay;

3)  assertion of the right by defendant; and

4)  prejudice to the defendant.

Barker, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; Briceno, 568 P.2d at 164.

In speedy trial analysis, the length of delay acts a "triggering" mechanism and the other above enunciated factors need not be examined unless presumptive prejudicial delay is present.

State v. Wombolt (1988), 231 Mont. 400, 402, 753 P.2d 330, 331; State v. Armstrong (1980), 189 Mont. 407, 424, 616 P.2d 341, 351; State v. Harvey (1979), 184 Mont. 423, 433, 603 P.2d 661, 667. If the court finds the delay to be presumptively prejudicial, the State has the burden of rebutting the presumption by providing a reasonable explanation for the delay and showing that the defendant was not prejudiced. Wombolt, 753 P.2d at 331; State v. Curtis (Mont. 1990), 787 P.2d 306, 313, 47 St.Rep. 277, 283.

From the date of arrest on July 30, 1988, to the trial of February 22, 1989, amounts to a delay of 207 days. The State argues that we should deduct time attributable to Hall before considering whether the delay was long enough to establish a presumption. In Curtis, 787 P.2d at 313, we expressly overruled this method of calculating the length of the delay:

> . . . The parties' briefs exhibit some confusion concerning at what point delay attributable to the defendant should be considered. Some confusion is not surprising considering the recent case law. Some cases deduct time attributable to the defendant before determining whether the delay was long enough to establish a presumption of prejudice. Other cases did not consider such delay until after the presumption of prejudice had been established and dealt with it under the second analytical element, the reason for the delay.
>
> We believe that the second procedure is more appropriate. The length of delay is considered twice in speedy trial analysis. In the first instance, it acts merely as a trigger to determine whether further inquiry is warranted. If further inquiry is warranted, the length of the delay is again considered as an inextricable component of the second element, the reason for delay. See Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; United States v. Colombo (1st Cir. 1988), 852 F.2d 19, 24.

In this case, the delay of 207 days is sufficient to raise a

6

presumption of prejudice and require further inquiry. Fife, 632 P.2d at 714-15. (194 days). The State now has the burden of providing a reasonable explanation for the delay and to show that the defendant was not prejudiced by the delay. Curtis, 787 P.2d at 314; Wombolt, 753 P.2d at 331.

We next examine the reasons for the delay. Hall contends that the 207 days of delay should be credited against the State. We disagree with Hall's contention. The District Court set Hall's original date for October 26, 1988. On October 6, 1988, the State moved to continue the trial date because the State had not received the results of the trace evidence test. The District Court reset the trial for December 12, 1988. The State, therefore, is responsible for the delay up to December 12, 1988. Next, on December 8, 1988, the State stipulated to Hall's motion to continue the December 12, 1988 trial date. The parties' stipulation was based on two reasons:

> 1) Hall's expert witness suffered serious heart ailments and had been unable to complete his evaluation of the physical evidence.
>
> 2) The State had recently endorsed an expert witness for which there had not been any opportunity for exchange of discovery.

The District Court granted the motion, and vacated the December 12, 1988, trial date. Later, the District Court reset the trial for February 22, 1989. While the State is responsible for the first delay of 135 days, both parties bear responsibility for the delay caused by the December 8, 1988, stipulation.

The State concedes that Hall satisfied the third element by

7

moving to dismiss on speedy trial grounds on February 16, 1989.

The last factor relating to the right to a speedy trial is the degree of prejudice suffered by the defendant. The degree of prejudice is determined by considering the oppressiveness of the pretrial incarceration , the anxiety and concern of the defendant, and the impairment of the defense. State v. Shurtliff (1980), 187 Mont. 235, 240, 609 P.2d 303, 306.

Hall has alleged as prejudice that he was the victim of oppressive pretrial incarceration, suffered anxiety and concern, and his defense was impaired by the delay. The State's motion on October 6, 1988, vacated the original trial date of October 26, 1988. The District Court rescheduled the trial for December 12, 1988. Obviously, the State's actions resulted in extending the incarceration of Hall prior to trial. The blame for vacating the next trial date, however, falls on Hall's shoulders. The parties stipulated to a continuance of the December 12, 1988, trial date. The continuance allowed Hall's expert to recover from a serious heart ailment, and allowed both parties the opportunity for exchange of discovery. In balance, therefore, we find Hall was not the victim of oppressive pretrial incarceration by the State.

Next, nothing in the record substantiates Hall's claim of suffering from "anxiety and concern." Even if Hall had presented some evidence of anxiety, the anxiety he suffered was not uncommon. Curtis, 787 P.2d at 316. " A certain amount of anxiety and concern is inherent in being accused of a crime." Curtis, 787 P.2d at 316; State v. Waters (1987), 228 Mont. 490, 494, 743 P.2d 617, 620;

8

State v. Chavez (1984), 231 Mont. 434, 444, 691 P.2d 1365, 1371. Nor has Hall shown any factors which show his defense was impaired. Thus, we find the defendant was not prejudiced by the delay.

Of the four factors we have considered, "[n]o single factor is determinative. Each facet of the analysis is weighed in light of the surrounding facts and circumstances." Waters, 743 P.2d at 619. Considering these four factors and the record as a whole, we find no excessive delay in bringing this case to trial. Thus, we find no violation of Hall's right to a speedy trial.

II.

Whether the District Court properly admitted defendant's statement concerning his acts at the scene of the crime.

When officer Magnuson confronted Hall with the fact that hairs had been recovered at the scene of the assault, Hall gave a statement to the officer in which he admitted going to the library the day before the assault, entering the periodical storage room, and masturbating. On January 26, 1989, Hall filed a motion in limine to prohibit the State from using the statement.

The District Court ruled that the State could introduce evidence of defendant's presence in the library but not of defendant's acts as admitted in his statement. However, the District Court noted in its order that the acts of the defendant may become relevant and admissable to rebut evidence offered by the defendant.

During the State's direct examination of officer Magnuson, the State introduced Hall's admission that he had been in the library

9

periodical storage room the day before the assault. The officer properly avoided any mention of Hall's acts while in the room. During cross examination, however, Hall's counsel questioned officer Magnuson extensively about Hall's statement and his reasons for focusing the investigation solely on Hall. In particular, Hall's counsel challenged the officer's failure to investigate other possible suspects and gather other hair samples for comparison. Following the cross-examination the State asked the District Court to reconsider its earlier ruling and permit officer Magnuson to testify fully about his reasons for suspecting Hall, which included Hall's masturbation story. After hearing arguments from both parties, the court realized that its earlier order had prevented the officer from fully answering Hall's counsel's questions concerning the investigation. The court then concluded that Hall's story was relevant to the questions raised concerning the focus of the investigation. After the court stated that it would permit redirect examination concerning the masturbation story, the court granted Hall's counsel permission to reopen his cross-examination and bring the previously excluded story to the jury's attention himself. The District Court then gave the following cautionary instruction to the jury concerning the evidence of masturbation.

> . . . ladies and gentlemen, you are instructed that any act of masturbation that may have been admitted to by the defendant is not admitted into evidence to prove that the defendant is guilty of the offense that he is charged with. You are not to infer guilt of the present charges from such evidence. Such evidence is not admitted to prove the character of the defendant. You must not allow

such evidence to prejudice you against the defendant. Such evidence is admitted solely for the purpose of explaining officer Magnuson's conduct in his investigation of this case and to aid you in any way that it may or may not bear on any issue of knowledge, identity or absence of mistake in this case . . .

Now Hall contends that the District Court's ruling was improper because the evidence had no probative value and was obviously prejudicial and inflammatory, based upon Rule 402, M.R.Evid. (excluding irrelevant evidence) and Rule 403, M.R.Evid (allowing the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.)

It is well established that the District Court has latitude of discretion in passing on the admissibility of evidence. State v. Oman (1985), 218 Mont. 260, 263, 707 P.2d 1117, 1119; State v. Gray (1983), 202 Mont. 445, 449, 659 P.2d 255, 257; State v. Pendergrass (1978), 179 Mont. 106, 112, 586 P.2d 691, 694; State v. Rollins (1967), 149 Mont. 481, 484, 428 P.2d 462, 464. The District Court's determination of the admissibility of evidence is subject to review only for abuse of discretion. Oman, 707 P.2d at 1119; State v. Stokes (1981), 195 Mont. 321, 325, 637 P.2d 498, 500; State v. Medicine Bull (1968), 152 Mont. 34, 45, 445 P.2d 916, 922. Rule 402, M.R.Evid. states in pertinent part: "Evidence which is not relevant is not admissible."

Also, Rule 401, M.R.Evid., defines relevant evidence:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant.

11

The Commission states this test of relevance:

> The test of relevance is whether an item of evidence will
> have any value, as determined by logic and experience,
> in proving the proposition for which it is offered . .
> . .

Usually, whatever naturally and logically tends to establish a fact in issue is relevant and that which fails to qualify is not relevant. Oman, 707 P.2d at 119. Monaco v. Cecconi (1979), 180 Mont. 111, 119, 589 P.2d 156, 161. Again, the District Court has broad discretion to determine whether or not the evidence is relevant. Without a showing that the District Court has abused its discretion, this Court will not overturn the District Court's determination of relevancy. McConnel-Cherewick v. Cherewick (1983), 205 Mont. 75, 79, 666 P.2d 742, 744.

Hall's own counsel, by challenging officer Magnuson's failure to investigate other possible suspects and gather other hair samples during the investigation, made Hall's masturbation story a relevant fact. The masturbation story explained the basis for the investigating officer's focused suspicions and placed Hall at the scene of the assault. Thus, we find no evidence in the record to determine that the District Court abused its discretion in determining the offered evidence was relevant.

Next, we must determine whether the above otherwise relevant evidence is to be excluded because its probative value is outweighed by the danger of unfair prejudice. Rule 403, M.R.Evid. Under Rule 403, the determination of admissibility is within the discretion of the trial judge and will not be disturbed unless

there is manifest abuse of discretion. Krueger v. General Motors Corp. (Mont. 1989), 783 P.2d 1340, 1346, 46 St.Rep. 2114, 2120; Zeke's Distributing Co. v. Brown-Forman Corp. (Mont. 1989), 779 P.2d 908, 911; 46 St.Rep. 1678, 1681. Here, the probative value of the evidence substantially outweighs the danger of unfair prejudice. Introduction of Hall's statement to the police was necessary after the cross-examination to explain why the Havre police department focussed their investigation solely on Hall and no other suspects. Furthermore, the District Court properly tempered the prejudicial effect of Hall's testimony with a cautionary instruction to the jury. The District Court did not abuse its discretion in allowing this evidence.

### III.

Whether the District Court properly refused defendant's proposed jury instruction concerning the eyewitness identification.

The District Court rejected Hall's proposed jury instruction no. 16 concerning eyewitness identification. Hall contends the following instruction should have been given:

> One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The State has the burden of providing identity beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.
>
> Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at

13

the time of the offense and to make the reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the State extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If, after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

14

Hall cites for support--and drew the above proposed instruction from--United States v. Telfaire (D.C. Cir. 1972), 469 F.2d 552. In Telfaire, a single eyewitness was the only incriminating evidence against the defendant. In the present case, two witnesses identified Hall as the perpetrator of the assault.

Moreover, this Court in the past has not elected to adopt the Telfaire instruction on eyewitness credibility. State v. Hart (1981), 191 Mont. 375, 393-94, 625 P.2d 21, 31, cert.den. 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102. In Hart, we rejected the Telfaire instruction for the following reasons: 1) The substance of the defendant's proposed instruction was adequately covered by other instructions; and 2) The instruction is not appropriate when there is more than a single eyewitness' unsubstantiated testimony which indentifies the offender.

The same reasoning we used in Hart, applies in this case. First of all, the District Court correctly observed that the substance of the instruction was adequately covered by other instructions. The court instructed the jury concerning the credibility of witnesses (Instructions Nos 1 and 7), the State's burden of proving defendant's guilt (Instruction No. 6), the competency and credibility of child witnesses (Instruction No. 11), the effect of prior inconsistent statements on believability and weight to be given the testimony of a witness (Instruction No. 13), the elements of the crime (Instruction No. 14), and the proof required to convict defendant of sexual assault (Instruction No. 18). If the instructions, reviewed as a whole, fully and fairly

15

present the law to the jury, the jury has been properly instructed. State v. Graves (1981), 191 Mont. 81, 93-4, 622 P.2d 203, 210-11. We determine that the jury was properly and adquately instructed on the credibility of the witnesses.

We also believe that the circumstances of this case do not mandate the allowing of Hall's proposed instruction. "Such an instruction may be proper, if not mandatory, in certain cases. The necessity of this type of instruction is especially clear when there is only a single eyewitness' unsubstantiated testimony which identifies the offender." Hart, 625 P.2d at 31. In this case before us, there is more than a single eyewitness identification of Hall. Two witnesses identified Hall as the perpetrator of the crime. Accordingly, we find no error in the District Court's refusal to give Hall's proposed Instruction No. 16.

IV.

Whether the District Court improperly allowed expert testimony.

On February 9, 1989, the State filed a pretrial memorandum in support of the admissibility of the expected testimony of Dr. Lawrence Jarvis and Dr. Janet Hossack, two clinical psychologists who had evaluated and treated D.B. On February 22, 1989, the first day of trial, Hall's counsel made a motion in limine to exclude the testimony of Drs. Jarvis and Hossack. The District Court denied Hall's motion, and allowed the testimony of the doctors.

Now, Hall argues his case was unfairly prejudiced by the admission of the psychologists' testimony concerning D.B.'s

16

credibility. In particular, Hall complains that Dr. Hossack should not have been permitted to testify that D.B.'s account of the assault was "a consistent coherent story" or to offer an expert opinion on the ability of children to be accurate eyewitnesses. Hall also argues that Dr. Jarvis should not have been permitted to testify that he thought D.B. was telling her story "as it occurred to her" and that D.B. "could pick out that individual that offended her."

In allowing the expert testimony of Drs. Hossack and Jarvis, the District Court relied upon our decisions in State v. French (1988), 233 Mont. 364, 760 P.2d 86; and State v. Geyman (1986), 224 Mont. 194, 729 P.2d 475. In Geyman, we held that expert testimony is admissible "for the purpose of helping the jury to assess the credibility of a child sexual assault victim." Geyman, 729 P.2d at 479. In French, we reaffirmed Geyman and held that the District Court did not abuse its discretion by admitting a school counselor's opinion as to whether the eight-year-old victim was telling the truth. French, 760 P.2d at 89.

Hall acknowledges our past decisions but argues that they may be distinguished from his case on the basis that in his case the identity of the offender rather than the occurrence of the offense was at issue. In support of his argument, Hall relies on our decision in State v. J.C.E. (1988), 235 Mont. 264, 270, 767 P.2d 309, 313, where we said:

> The identity of the alleged perpetrator in this case is not a question requiring an expert opinion. Whether S was the victim of incest is a question that might be

clarified by an expert opinion on her physical or mental state. However, whether the evidence adduced by the State establishes J.C.E. as perpetrator requires only the common logic that is indeed well within the capacity of a lay jury.

In J.C.E., the victim did not testify as to the identity of her assailant, instead, the State attempted to have their expert identify the defendant as perpetrator of the incest. This we found unacceptable. In this case, neither Dr. Hossack nor Dr. Jarvis attempted to identify Hall as the perpetrator of the sexual assault. D.B. herself, unlike the victim in J.C.E., identified Hall as her assailant. As the District Court properly noted, Hall's counsel challenged D.B.'s credibility with respect to her identification of Hall, raising questions concerning her ability to identify and the possibility of undue influence. The doctors were then allowed to testify, not to the identity of the defendant, but whether D.B. was capable of identifying her offender. The ultimate issue of identity of Hall still came from D.B.'s testimony and not the testimony of the doctors. Thus, we find the District Court did not err in admitting the expert testimony in this case.

In weighing the admissibility of expert testimony in child molestation cases, the courts face an intrinsic problem in the conflict between the evidence offered and the right of a defendant to have the jury decide the guilt or innocence of the accused. The test to be applied by district courts when faced with the problem, and by this Court when it comes here, can be found in the Montana Rules of Evidence. The doctors here are experts in their fields, trained in psychology. As experts, their testimony is admissible

if it will help the jury to understand the evidence, or to determine a fact in issue. Rule 702, M.R.Evid. The fact in issue in this case was the identity of the transgressor. No party disputes that the child was assaulted by somebody. A subissue of the identity issue was the ability of a child of tender age to be accurate in identification. Expert testimony on the subissue was especially valuable here, as a matter helpful to the jury to understand the evidence, and to determine a fact in issue, that is, the identity of the transgressor. The testimony here eminently qualifies under Rule 702.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

19