NO.   93-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN THE MATTER OF THE

SEWARD CLARK McKITTRICK TRUST



FILED

DEC 14 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               Honorable Maurice R. Colherg, Jr., Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Eula  Compton,  Missoula,  Montana

        For Respondent:

        Jock B.  West  and  Bruce 0.  Bekkedahl,  Billings,
        Montana

        Cynthia  R.  Woods,  Billings,  Montana

        Earl J.  Hanson,  Billings,  Montana


                    Submitted  on  Briefs:   November  5,  1993

                              Decided:   December  14,  1993

Filed:


                    _____
                                  Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal from the District Court for the Thirteenth Judicial District, Yellowstone County. Trustee Leon McKittrick and intervenors Leo, Larry, Lew and Lynn McKittrick appeal a judgment upholding the validity of the revocable trust created by their father, Seward Clark McKittrick, before his death. We affirm.

We restate the issues as:

1. Are certain of the District Court's findings clearly erroneous?

2. Did the court err in rejecting the claim of undue influence?

3. Did the court err in excluding evidence of possible attorney/cult member involvement in the creation of the trust?

4. Did the court err in refusing to permit expert examination of a trust draft offered by Barbara McKittrick?

Seward Clark McKittrick (Clark) died in May 1990 at age sixty-six, of cancer. He and his wife, Barbara, had been married for over forty years and had seven sons, all of whom were adults at the time of Clark's death. Five of those sons, Leo, Larry, Lew, Lynn, and Lundell, are intervenors in this action. Another son, Leon, is the trustee of the Seward Clark McKittrick Revocable Trust. Lonny, the seventh son, is not a party to these proceedings. The position of Leon is adverse to Barbara's position in this action. The position of Leo, Larry, Law, and Lynn (the adverse intervenors) is

also adverse to Barbara's position.  Lundell's position is aligned with that of Barbara.

Clark and Barbara lived modestly during Clark's lifetime. Barbara devoted most of her time to running their household and raising their sons.  Clark worked in a corporate warehouse business in Billings, Montana, in which he and Barbara owned half the stock.

In late 1989, the McKittrick family was aware that Clark was suffering from terminal cancer.   Clark discussed the idea of setting up a revocable living trust with Leon, a licensed attorney in California, and Leo, an accountant.  On March 12, 1990, Clark, Barbara,  and Lundell met with a representative of Legal Tech, a Billings,  Montana,  firm specializing in the estate and tax business.  An acquaintance of Leo's worked at the firm, and Leo had recommended it to Clark.  As a result of the meeting, Legal Tech prepared drafts of a trust, a will, a living will, and a durable power of attorney for Clark.

On April 11, 1990, Clark's physical condition deteriorated and he was admitted to a Billings hospital. Attorney Gil Kelling, who often worked with Legal Tech, met with Clark and Barbara in the hospital to complete Clark's estate planning documents. Barbara is the initial beneficiary of the trust. Clark wanted Leon to act as trustee.  Barbara, who was worried that Leon would not adequately provide for her perceived needs, preferred Lundell.   After the discussions, Kelling inserted in the trust a power of withdrawal on

3

the part of Barbara, Leon was named as trustee, and Barbara was given a limited power of appointment. Kelling testified at trial that he did not completely read the revised trust instrument to Clark but that he discussed with Clark the various provisions, including Barbara's power of withdrawal. Clark signed the final form of the trust and other documents on April 12, 1990,

Clark and Barbara executed a stock power to transfer the stock in the warehouse business to Leon, as trustee. After Clark's death, a buyout of Clark and Barbara's stock in the warehouse was arranged from the proceeds of life insurance, for a total price of $1,090,000. Clark and Barbara also transferred to the trust their home, which they owned jointly, and another piece of undeveloped real property.

The trust provisions at issue in this litigation read:

THIRD: Upon my death, if my wife, Barbara E. McKittrick, survives me . . . the assets of the trust (including assets received by the Trustee under my Last Will) shall be held, managed and distributed in accordance with the following provisions:

A. The Trustee shall pay to my wife the net income of the trust not less often than quarter-annually so long as my wife lives. Also, during the life of my wife,. the Trustee shall distribute to her from the principal of the trust such further amounts as the Trustee may deem necessary or proper to provide for her support, maintenance and health; and, in exercising such discretionary power, the Trustee may, but need not, consider any other resources available to my wife and shall give primary consid- eration to her needs and desires. <u>In addition. my wife shall have the risht at any time to withdraw such amounts from the nrincival of the trust (even</u>

4

> to the woint of comwletelv exhaustina the same) as
> my wife shall determine. [Emphasis supplied.]
>
> . . .
>
> B. Upon the death of my wife, the accrued, but
> unpaid, income shall be paid to the estate of my
> wife and the then remaining assets shall be dis-
> tributed among my then living descendants in such
> amounts and upon such terms as my wife shall ap-
> point by specific reference to this limited power
> in her Last Will. To the extent that my wife does
> not exercise such limited power of appointment,
> such assets shall be added to the principal of the
> trusts created under the provisions of paragraph
> FOURTH hereof.

The adverse intervenors point out that the underlined portion of paragraph THIRD(A), the power of withdrawal in favor of Barbara, was not present in earlier drafts of the trust, nor was the limited power of appointment in paragraph THIRD(B). They further point out that, if Barbara exercises the power of withdrawal, tax advantages of the trust are destroyed.

A substantial amount of evidence at trial related to alleged cult membership and activities carried on by Clark, Barbara, and their son Lundell. Beginning in the early 1980's, Clark, Barbara, and Lundell attended meetings with a group described by Barbara and Lundell as a Bible study group and described by Leon and the adverse intervenors as a cult. Leon and the adverse intervenors claimed that David H. Colville was the cult leader. They intro-duced into evidence a text co-authored by Colville, Life Force in the Great Pyramids. Matters discussed in the book and studied by

5

the group involved biorhythms, pyramids, and issues relating to inanimate objects possessing energy and "blowing" people. ("Blowing" is "a person's natural harmonic balance with nature being altered in a negative fashion.")

Over the years, Clark and Barbara displayed behavior described by the District Court as "bizarre" and "consistent with cult membership." For example, they had the insulation removed from their home because it was "blowing" them. In the months prior to Clark's hospitalization, Clark and Barbara were not living in their home and were secretive with the members of their family other than Lundell concerning their whereabouts.

In September of 1990, after Leon, as trustee, refused certain requests by Barbara for funds, Barbara demanded all of the assets in the trust, relying upon her power of withdrawal. Leon's resistance to her demand led to this litigation. Leon and the adverse intervenors claim the language in the trust document granting Barbara a power of withdrawal is inconsistent with other portions of the document, for tax planning reasons. They further claim Clark was subjected to undue influence by Barbara and other cult members and that there was actual or constructive fraud in the creation of the final trust document.

Following a nonjury trial, the District Court found in favor of Barbara. As to the alleged cult activity, the court stated,

> [a]lthough this activity seems abnormal and although the study group's methodology appears consistent with cult activity, the Court cannot on this basis make any adverse findings related to the validity, construction or interpretation of the trust.

The court noted that even Leon's testimony concerning his conversations with his father after the trust document was signed supports the position that Clark was aware of and understood Barbara's power of withdrawal under the trust document.

The evidence also included the testimony of Clark's treating physician that he was competent and "his thinking was intact" on the day he signed the trust and other documents, and the testimony of a witness to the signing of the trust that Clark was of sound mind and that she observed no undue influence. The District Court upheld the validity of the Seward Clark McKittrick Revocable Trust. Leon and the adverse intervenors appeal.

I

Are the District Court's findings clearly erroneous?

In Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285, this Court adopted a three-part test for determining whether findings of fact are clearly erroneous.

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. . . . Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court

7

with the definite and firm conviction that a mistake has been committed."

Interstate Production, 820 P.2d at 1287.

Leon and the adverse intervenors challenge the following specific findings of the District Court: (1) that Clark <u>and Barbara</u> owned sixty-five shares of stock in the warehouse business; (2) that "several drafts" of the McKittrick trust were prepared; (3) that attorney Kelling met with Clark more than once; (4) that attorney Kelling discussed the various trust provisions with Clark; (5) that Exhibit 9 was the trust agreement signed by Clark: (6) that the McKittrick Trust creates a "coherent plan;" and, (7) that the trust represents a natural disposition for Clark.

We have reviewed the record. The arguments of Leon and the adverse intervenors concerning the above findings depend on their inferences from and interpretations of those findings. In some instances, even if their arguments were correct, the points they make are ultimately irrelevant. Our review reveals that the findings themselves are supported in the record. We do not believe the District Court has misapprehended the effect of the evidence or that a mistake has been made. We therefore hold that the challenged findings are not clearly erroneous.

II

Did the court err in rejecting the claim of undue influence?

Elements to be considered in a claim of undue influence are: (1) a confidential relationship between the person attempting to exert influence and the trustor; (2) the physical condition of the trustor as it affects his ability to withstand the influence: (3) the mental condition of the trustor as it affects his ability to withstand the influence: (4) the unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and, (5) the demands and importunities as they may affect that particular trustor, taking into consideration the surrounding circumstances. Cameron v. Cameron (1978), 179 Mont. 219, 229, 587 P.2d 939, 945.

In this case, the District Court found:

Concerning the issue of undue influence, the Court finds that there is a failure by trustee and the adverse intervenors to prove its existence. The discussions between Barbara and [Clark] leading to execution of the trust document were appropriate discussions made under the circumstances between the two parties who had an ownership interest in the assets intended to be placed in the trust. There was no confidential relationship existing between Barbara and [Clark] in this context. The physical and mental condition of [Clark] was appropriate to withstand any claimed undue influence. The disposition was natural in allowing his surviving spouse control over the trust estate.

As to the first element, Leon and the adverse intervenors claim a confidential relationship does not require that the parties' relationship be confidential as to the specific property at issue. They state, without citation to authority, that the husband and

9

wife relationship is traditionally a confidential relationship in all aspects.

Any presumption of a confidential relationship between Clark and Barbara was diminished by evidence that Clark generally did not discuss business or family financial matters with Barbara, but instead reserved those responsibilities solely for himself or discussed them with his sons. Moreover, all of the elements listed above, not just the presence of a confidential relationship, are considered in a claim of undue influence. The record supports the court's findings regarding Clark's physical and mental condition and the naturalness of the disposition in allowing the surviving spouse the option of control over the trust estate. We hold that the court did not err in rejecting the claim of undue influence.

### III

Did the court err in excluding evidence of possible attorney/cult member involvement in the creation of the trust?

According to an offer of proof by Leon and the adverse intervenors, an unnamed witness was prepared to testify that the witness visited Clark in the hospital: that, during the visit, three other people stopped in to see Clark: and, that Clark introduced one of the three visitors, a woman, as a member of his church and an attorney. The District Court disallowed the testimony.

10

Decisions regarding the admission of evidence are subject to a standard of review of abuse of discretion. State v. Hall (1990), 244 Mont. 161, 169, 797 P.2d 183, 188. In this case, the offer of proof was that the woman introduced in the hospital room was an attorney, not that she in any way influenced or advised Clark or Barbara in regard to the terms of the trust. The court disallowed the testimony on grounds that the witness had not been disclosed and that the proposed testimony was cumulative and of questionable relevance. We hold that the District Court did not abuse its discretion in refusing to allow this unnamed witness to testify.

IV

Did the court err in refusing to permit expert examination of a trust draft offered by Barbara McKittrick?

The adverse intervenors proposed to have a document expert examine a document purported by Barbara to be a draft of the McKittrick trust. The draft contained the right of withdrawal, but did not name a trustee. Leon and the adverse intervenors claim this proves the draft is a forgery, because of other testimony that Leon was named as trustee before the right of withdrawal was added to the trust. In an offer of proof, the intervenors stated that their document expert would testify that it did not appear that the draft document was prepared on the same laser printer as was the final trust.

In an order entered with its findings, conclusions, order, and judgment, the District Court stated

> Any determination would at best be inconclusive. The matter had been scheduled for trial for some period of time and this exhibit is not determinative in the findings of fact and conclusions of law filed concurrently by the Court. An examination of this document would create additional expense and delay in reaching a determination of the issues. No one has suggested an arrangement that the Court would deem appropriate for transmittal of the document to an expert.

> For allt of these reasons the motion should be denied.

As stated in Issue III, our standard of review on evidentiary questions is whether the District Court abused its discretion. We hold that no abuse of discretion has been shown in the denial of the request for examination of the document.

Barbara asks that this Court assess sanctions against Leon and the adverse intervenors pursuant to Rule 32, M.R.App.P., for the costs of this appeal, on grounds that the appeal was taken without substantial or reasonable grounds. Under the circumstances of this case, we decline to so order.

Affirmed.

_____
Chief Justice

12

We concur:

_John Conway Harrison_

_William E. Hunt_

_Jim Treweiler_

_Karla M. Gray_
             Justices

13