No. 02-585

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 364

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

MALACHI CODY ROBINSON,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Fourth Judicial District,
        In and For the County of Missoula, Cause No. DC 2002-30,
        Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Robert W. Henry and Lynn Fagan, Public Defenders' Office,
      Missoula, Montana

   For Respondent:

      Honorable Mike McGrath Attorney General; C. Mark Fowler,
      Assistant Attorney General, Helena, Montana

      Fred Van Valkenburg, County Attorney, Missoula, Montana

          Submitted on Briefs: November 20, 2003

              Decided: December 18, 2003

Filed:

     _____
           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Malachi Cody Robinson was arrested for disturbing the peace after yelling unprovoked obscenities at a police officer while on a crowded street. Robinson filed a motion to dismiss on the basis that what he said was protected speech under the First Amendment of the United States Constitution. The District Court denied Robinson's motion, concluding that Robinson's statements did not constitute protected speech but rather were "fighting words." Robinson appeals. We affirm.

### ISSUE

¶2     The issue on appeal is whether the District Court erred in denying Robinson's motion to dismiss by concluding that his statements to the police officer constituted "fighting words" and therefore were not protected speech under the United States and Montana Constitutions.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On October 8, 2000, at approximately midnight, Robinson was crossing the intersection of Broadway and Higgins in Missoula, Montana. Missoula County Sheriff's Deputy David McGinnis (McGinnis) was seated in a marked patrol car stopped at the traffic light. As Robinson crossed the intersection, which was crowded with several other pedestrians also crossing the street, Robinson glared at McGinnis and said, "fucking pig." McGinnis stated that this was said in a loud voice, prompting several pedestrians to take note and to move away from Robinson.

¶4     When Robinson reached the other side of the street, McGinnis parked his patrol car and approached Robinson on foot. He claims he told Robinson that "he now had my attention and asked him if there was anything he wanted to talk about." Robinson, stretching

2

his vocabulary to its fullest, replied, "Fuck off, asshole." McGinnis arrested Robinson for disorderly conduct, in violation of § 45-8-101, MCA.

¶5 Robinson filed a motion to dismiss in Justice Court, arguing that his statements to McGinnis were protected speech under the "free speech" provisions of the United States Constitution and the Montana Constitution. The Justice Court disagreed and denied his motion. Pursuant to a plea agreement, Robinson pled *nolo contendere* to the charge while reserving his right to appeal the denial of his motion to dismiss. He was fined $100, $50 suspended, and sentenced to ten days in the Missoula County jail, also suspended.

¶6 Robinson appealed the denial of his motion to dismiss to district court. His appeal did not seek redress of a state constitutional right, but rather was premised exclusively on federal constitutional grounds. After both parties briefed the matter, the District Court also denied his motion, concluding that, "Robinson's speech had a direct tendency to violence, as it met the definition of fighting words . . . ." Robinson filed a timely appeal.

## STANDARD OF REVIEW

¶7 Although courts often have to determine whether a juvenile should be tried as an adult, one wonders, in the instant case, whether we should reverse the inquiry. Resisting that temptation, we employ the usual standard of review; we review a District Court's grant or denial of a motion to dismiss *de novo* as a question of law. *State v. Murphy*, 2003 MT 276, ¶ 11, 317 Mont. 500, ¶ 11, 78 P.3d 848, ¶ 11.

3

**DISCUSSION**

¶8 The issue on appeal is whether the District Court erred in denying Robinson's motion to dismiss by concluding that his statement to the police officer constituted "fighting words" and therefore was not protected speech under the United States and Montana Constitutions. As we noted above, Robinson did not present a state constitutional claim to the District Court, nor did he present such an argument to this Court. Therefore, we will determine this case strictly on federal constitutional grounds.

¶9 Robinson was charged with violating § 45-8-101(1)(c), MCA. This statute provides that "[a] person commits the offense of disorderly conduct if he knowingly disturbs the peace by . . . (c) using threatening, profane, or abusive language." We have previously construed this statutory language "as only applying to words that have a direct tendency to violence and which are willfully and maliciously uttered." *City of Billings v. Batten* (1985), 218 Mont. 64, 69, 705 P.2d 1120, 1124. In other words, this statute applies only to "fighting words."

¶10 Robinson argues that his words were not "fighting words." Therefore, he argues, he committed no crime but merely exercised his constitutional right to speak freely.

¶11 As we explained in *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 438, 704 P.2d 1021, 1024, the right to free speech is protected by the First Amendment to the United States Constitution. This right is not absolute, however. There are some types of speech that are not protected and can subject the speaker to criminal action; one such type is speech that is considered to constitute "fighting words."

¶12 "Fighting words" are those words that "inflict injury or tend to incite an immediate breach of peace" (*O'Shaughnessy*, 216 Mont. at 438, 704 P.2d at 1024), or "have a direct tendency to violence" (*Batten*, 218 Mont. at 69, 705 P.2d at 1124). The United States Supreme Court noted in *Houston v. Hill*, that "[s]peech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Houston v. Hill* (1987), 482 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398, 412 (citation omitted).

¶13 Robinson argues that the Ninth Circuit Court of Appeals' decision in *United States v. Poocha* (9th Cir. 2001), 259 F.3d 1077, controls his case. In *Poocha*, several people had gathered as National Park Service rangers were trying to arrest someone. Poocha was among the spectators, many of whom were loudly protesting the arrest. A ranger specifically told Poocha to disperse. Poocha responded with "f*** you." Poocha was charged with violating the federal disorderly conduct regulation prohibiting the use of "fighting words." He was found guilty. The Ninth Circuit, however, reversed, holding that Poocha's language was not such that there was a "likelihood that the person addressed would make an immediate violent response." The *Poocha* Court also recognized that the "fighting words" exception

> requires a narrower application in cases involving words addressed to a police officer, "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words'."

*Poocha*, 259 F.3d at 1081 (citation omitted).

¶14     The District Court concluded that the Ninth Circuit's decision in *Poocha* was not controlling precedent. We agree. The Supremacy Clause does not require state courts to follow precedent from the circuit courts of appeal interpreting the United States Constitution. "In passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court." *Freeman v. Lane* (7th Cir. 1992), 962 F.2d 1252, 1258, citing *United States ex rel. Lawrence v. Woods* (7th Cir. 1970), 432 F.2d 1072, 1075. Last month the Arizona Supreme Court noted that it is not bound by the interpretation by the Ninth Circuit Court of Appeals as to what is required by the United States Constitution. *State v. Montano* (Ariz. 2003), 77 P.3d 1246, 1247 n.1. Likewise, in *People v. Dunlap* (Colo. 1999), 975 P.2d 723, 748, the Colorado Supreme Court held that it is not bound by the Tenth Circuit Court's interpretation of federal constitutional requirements; that the lower federal courts do not have appellate jurisdiction over the state courts and their decisions are not conclusive on state courts, even on questions of federal law.

¶15     Accordingly, this Court is not bound to march "lock-step" with the Circuit court's reasoning in its decision in *United States v. Poocha* (9th Cir. 2001), 259 F.3d 1077. Rather, as the District Court correctly concluded, our holding in *O'Shaughnessy* controls this case.

¶16     In *O'Shaughnessy*, the defendant and his friends were engaged in a loud conversation at about 2:00 a.m. while walking through the City of Whitefish. An officer approached them and asked them "to hold it down." The parties dispute what occurred and what was said next

6

but according to the police officer he asked O'Shaughnessy between three and five times to "keep it down." He warned that he would have to arrest him for disturbing the peace if he did not comply. O'Shaughnessy then proceeded to get into the back seat of the patrol car without being asked to do so. The officer asked him to get out. O'Shaughnessy stepped out of the vehicle but then immediately got back in again. After getting out of the car a second time, O'Shaughnessy approached the officer as if to shake hands. According to the officer's testimony, when he refused to shake O'Shaughnessy's hand, O'Shaughnessy called him a "m*****-f*****" and said he would continue to "holler and yell when and wherever" he wanted. At this point, the officer arrested O'Shaughnessy, who continued to be threatening and vulgar. Upon arriving at the police station, O'Shaughnessy's profane and threatening behavior continued in front of a female desk clerk. A jury convicted O'Shaughnessy of disturbing the peace in violation of a Whitefish municipal ordinance written similarly to § 45-8-101(1), MCA.

¶17 During O'Shaughnessy's trial in District Court, the court presented the following instruction to the jury on the meaning of "fighting words":

> You are instructed that the words and language of the defendant must have been of such nature that men of common intelligence would understand would be words likely to cause an average person hearing such words to fight. Threatening profane, and obscene words, said without a disarming smile, are generally considered to be "fighting words."

*O'Shaughnessy*, 216 Mont. at 437, 704 P.2d at 1024.

¶18 On appeal from the conviction, this Court analyzed the free speech issue in the context of United States Supreme Court precedent in *Chaplinsky v. New Hampshire* (1942),

7

315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, wherein the defendant, while being escorted to city hall by a traffic officer told the city marshal, "You are a God damned racketeer . . . a damned Fascist . . . ." The United States Supreme Court held that the right of free speech is not absolute.

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words–those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*O'Shaughnessy*, 216 Mont. at 438, 704 P.2d 1024, citing *Chaplinsky*, 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035.

¶19 Based on *Chaplinsky*, this Court held that the jury properly found that O'Shaughnessy's speech constituted "fighting words," and that, by definition, a threat of violence or threat of violent response was present. *O'Shaughnessy*, 216 Mont. at 438-39, 704 P.2d at 1024.

¶20 *O'Shaughnessy* and *Chaplinsky* are clearly the controlling precedents. *O'Shaughnessy*, like the instant case, involves the same expletive directed at a police officer.

¶21 As to whether the Ninth Circuit's decision in *Poocha* is even persuasive, we fail to see the logic in concluding that words (such as "f****** pig") may or may not be deemed "fighting words" depending upon the intended recipient. If the object is a fellow citizen, they are considered fighting words. If, on the other hand, the object is a police officer, who, if well-trained to exercise restraint, will be less likely to respond belligerently, the words

8

are somehow less provocative.  Were we to adopt this "who is likely to respond belligerently" rationale, any troglodyte could wander the streets calling young children and old men "f****** pigs" because, due to their age or infirmity, they, like the well-trained policeman, will not be able to respond in a violent fashion.

¶22    If the statements in question had been uttered in the context of a political rally or protest, free speech concerns might well prevail.  However, we fail to see how randomly goading a police officer by calling him a "f****** pig" adds to our constitutionally-protected social discourse.  It is one thing to expect peace officers to exercise more restraint than the average citizen.  However, it is quite another to allow the likes of Malachi Robinson to gratuitously test that restraint without fear of being charged with disorderly conduct.

¶23    In *O'Shaughnessy*, we cited the United States Supreme Court's observation "that such utterances are no essential part of any exposition of ideas  and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."  *Chaplinsky*, 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035.

¶24    If we are to maintain a "fighting words" interpretation of § 45-8-101, MCA, per our decision in *O'Shaughnessy*, then we must conclude that, outside the confines of a sty, "f***** pig" qualifies as sufficiently and inherently inflammatory, irrespective of the intended audience.

¶25    The decision of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

9

We concur:

/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶26 I dissent.

¶27 I begin by saying that I agree with the Court that we are not bound to follow the Ninth Circuit's interpretation of federal constitutional requirements. Moreover, I completely concur with the Court's conclusion that Robinson's utterances are totally lacking in social value. This being said, I do not agree with the Court's ultimate conclusion here.

¶28 In my judgment, *O'Shaughnessy* is not dispositive of this case. O'Shaughnessy was tried before and convicted by a jury. Under such circumstances, we review the evidence, on appeal, in a manner that is most favorable to the state. *State v. Vandersloot*, 2003 MT 179, ¶ 8, 316 Mont. 405, ¶ 8, 73 P.3d 174, ¶ 8. Here, by contrast, we do not defer to a jury verdict; instead, we conduct a *de novo* legal analysis.

¶29 O'Shaughnessy was given multiple warnings to quiet his loud, disruptive behavior. He refused to comply. He twice entered the patrol car without being asked to do so, and he threatened continued disobedience of police orders in a direct and personally abusive manner. These circumstances provided ample evidence upon which a jury could convict O'Shaughnessy of disorderly conduct. By contrast, Robinson uttered a crude statement from the sidewalk in the direction of an officer who was sitting behind the wheel of a squad car.

¶30 More to the point, it was McGinnis--not Robinson--who escalated the encounter. After Robinson made his remark, McGinnis pulled over, parked his squad car, approached Robinson on foot, and challenged him to further conversation. Had McGinnis let it go and driven on once the light turned green, the two men would never have faced off on the street.

¶31 The Court concludes that the fact that the intended recipient of Robinson's vulgar

11

remarks was a police officer should have no bearing on our decision. I disagree. The "young children and old men" referenced in ¶ 21 of the Opinion are neither trained nor obligated to keep the peace. Those distinctions belong to police officers. This being so, I agree with the conclusion of the Ninth Circuit that a trained officer should ". . . be expected to exercise a higher degree of restraint than the average citizen." *Poocha*, 259 F.3d at 1081. Instead of exercising restraint, Deputy McGinnis went out of his way to confront Robinson. It was only at this point, and not before, that the prospect of an actual "breach of the peace" arose.

¶32 I do not condone Robinson's vulgar remarks, nor do I blame McGinnis for being angered by them. Nonetheless, I would conclude, on these facts and on the presumption that an officer should exercise restraint in the face of such facts, that Robinson's conduct and language did not rise to the level of "fighting words." I would therefore reverse the judgment of the District Court.

/S/ PATRICIA COTTER

Chief Justice Karla M. Gray joins in the dissent of Patricia O. Cotter.

/S/ KARLA M. GRAY