No. 03-549

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 151

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

CRAIG W. HOLT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 01-266,
The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Appellate Defender, Helena, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Robert L. Deschamps, III,
Special Deputy County Attorney, Billings, Montana

Submitted on Briefs: April 26, 2005

Decided: July 11, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Craig W. Holt (Holt) appeals a judgment and sentence docketed June 3, 2003, in the Thirteenth Judicial District, Yellowstone County. We affirm in part and reverse in part.

¶2 We restate and address the following issues on appeal:

¶3 1. Did the District Court err in not dismissing charges of theft in Counts I and III because the affidavit in support of the information did not allege independent admissible evidence that Holt exercised unauthorized control over the money he allegedly stole?

¶4 2. Did the District Court err in refusing to sever the trial of Count I from Counts III and IV?

¶5 3. Must this Court exercise its plain error jurisdiction and conclude Holt may withdraw his *nolo contendere* plea?

¶6 4. Did the District Court err by not making an informative inquiry into Holt's ability to pay restitution?

¶7 5. Did the District Court err in imposing conditions on Holt's suspended sentence prohibiting his possession or consumption of alcohol and prohibiting him from establishing a checking or credit card account?

### BACKGROUND

¶8 Holt was charged by Information with five counts of felony theft, in violation of § 45-6-301(1)(b), MCA, on April 2, 2001. The Information and supporting affidavit alleged five instances in which Holt, while an attorney in Billings, purposely or knowingly obtained or exerted unauthorized control over money of his clients, and he

used or concealed the money so as to deprive the owners of its use. During the course of the case, the District Court dismissed Counts II and V. The facts concerning these charges are not relevant to this appeal, and are not discussed.

¶9 Count I alleged theft from the Estate of Edward Dietz (Edward) by Holt between November 1992 and January 1997. Holt was hired as the attorney for Edward's estate by Adolph Dietz (Adolph), the personal representative. Adolph and Holt opened a joint checking account in the estate's name in November 1992. Adolph signed blank checks on the estate account and left them with Holt. Using these checks, Holt transferred money from the estate account to his attorney trust fund account. The amount of these transfers was alleged to be more than $367,000.

¶10 In late 1995, Adolph consulted Billings attorney Steven Hanson (Hanson), asking questions regarding Holt's handling of Edward's estate. Adolph died in June 1997, having never pursued a change of counsel for Edward's estate. After Adolph's death, his heirs hired attorney Hanson to probate Adolph's estate. While probating the estate, Hanson met with Holt. During this meeting, Holt admitted that money was missing from the account of Edward's estate, and alleged he had recently discovered that his secretary had been embezzling funds. While Holt and the State dispute the amount of money embezzled by the secretary (Holt claims at least $29,592, while the State claims that an audit showed less than $2,400), the total amount of money unaccounted for from Edward's estate was more than $300,000.

¶11 Count III alleged theft from the Conservatorship of Irene Sillivan (Irene) by Holt between October 1998 and December 1999. Holt allegedly failed to return $8,500 he had

taken from Irene's estate. Craig Sillivan (Craig) was Irene's conservator, and he hired Holt as counsel for the conservatorship. Craig transferred $15,000 to Holt in October or November of 1998 to cover legal fees and investigative costs to search for bonds owned by Irene.

¶12 In 1999, Holt quit the practice of law, and Billings attorney Deborah Bishop (Bishop) took over the accounting for Irene's conservatorship. Bishop contacted Holt in September 1999 about the legal fees from Craig. Holt responded that he had applied $1,500 of the $15,000 for his fee, $5,000 for investigative costs and he would return the remaining $8,500 by the second week of October 1999. Bishop again contacted Holt in late October and also in November 1999 about the money. Holt neither responded to Bishop nor re-paid the $8,500. Bishop then filed a complaint with the Commission on Practice on behalf of the conservatorship. Holt told the Commission that Craig had told him not to pay the $8,500 until instructed to do so, but evidence exists that Craig denied that such a conversation took place. Craig has since died. The State Bar of Montana Lawyers= Fund for Client Protection paid the conservatorship $8,500 as reimbursement for the money taken by Holt.

¶13 Count IV alleged theft of funds from one Jim Anderson (Anderson) by Holt between November 1998 and November 1999. Holt allegedly stole $19,625 from the proceeds of a lawsuit settlement belonging to Anderson. Holt received a settlement check for $38,000, issued to himself and Anderson as joint payees in October 1998. Both Holt and Anderson endorsed the check, and Holt deposited the funds in his trust account. Holt dispersed $5,000 to Anderson and said he would pay the balance after calculating

4

his fees. Holt delivered Anderson a check for $19,625, but the check was returned for insufficient funds. Anderson has never received the remaining settlement money.

¶14 Holt pled not guilty. He then filed motions to dismiss Counts I and III, arguing that the affidavit in support of the Information did not establish probable cause, and a motion to sever Count I from Counts III and IV. The District Court denied these motions.[1]

¶15 On October 23, 2002, pursuant to a plea agreement, Holt pled *nolo contendere* to Counts I, III and IV, pursuant to § 46-12-204(1), (2), MCA, and *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The agreement provided that Holt could withdraw his plea if the agreed sentences were not imposed by the District Court. The State agreed to recommend an aggregate sentence of 30 years incarceration with 25 years suspended. This recommended sentence consisted of ten-year suspended sentences for Counts I and III, and a ten-year sentence with five years suspended for Count IV, with all sentences to be served consecutively. The plea agreement further stated that Holt retained the ability to appeal any adverse pretrial rulings and restitution could be resolved by stipulation or through a sentencing hearing. The plea agreement did not contain any mention that Holt might be entitled to good time credit against a sentence imposed under Count I because the alleged theft occurred before January 31, 1997. Nor did it state that specific conditions could be imposed on the suspended term of his sentence. Neither did the District Court advise him orally of these possibilities.

---

[1] Motions concerning Counts II and V were also filed, but as these counts were ultimately dismissed, and are not a part of this appeal, they are not discussed.

¶16 A hearing concerning restitution was held on May 8, 2003. Prior to this hearing, a pre-sentence investigation report (PSI) was prepared which stated that Holt was 52 years old, in good health and held both a bachelor=s degree in wildlife biology and a law degree. The PSI reported that for the previous year Holt had been self-employed as a handyman and chef earning $700 per month. Holt's assets were valued at $1,250. The PSI noted that a federal civil judgment for $275,000 against him had been docketed, and additional debts of approximately $150,000 were listed. The PSI contained a statement that it seemed unlikely that Holt could pay restitution, and it made no recommendation regarding restitution.

¶17 At the hearing, the District Court heard four witnesses regarding what the proper amount of restitution would be. One of these witnesses, attorney Hanson, testified as to Holt's ability to pay, noting that Holt had previously agreed to a restitution schedule in an earlier, related proceeding.

¶18 At the sentencing hearing on May 13, 2003, the District Court followed the plea agreement and imposed a ten-year suspended sentence on Count I, a consecutive ten-year suspended sentence on Count III, and a consecutive ten-year commitment to the Department of Corrections (DOC), with five years suspended, on Count IV. This resulted in an immediate commitment to DOC for five years followed by 25 years of probation. Holt was also ordered to pay $386,534.70 in restitution. The District Court noted that Holt was a smart and able-bodied man who was young in terms of work life. However, the District Court also acknowledged it would be difficult for Holt to pay the entire amount over 30 years. The District Court also imposed twelve of thirteen

6

recommended conditions on the suspended portions of the sentences for Counts I and III. The District Court's written order was entered on June 3, 2003. The District Court later granted Holt's motion to strike from the written judgment a condition prohibiting Holt from practicing law or obtaining employment in the legal profession.

¶19 On July 10, 2003, Holt filed a "Motion to Correct Sentence" and a notice of appeal. The District Court did not rule on the motion to correct sentence because Holt had appealed to this Court.

## STANDARDS OF REVIEW

¶20 On appeal, Holt argues that some facts in the affidavit in support of the motion to file the information must be excised and, after these facts are deleted, the affidavit no longer establishes probable cause. Holt argues that the original inclusion of these facts violated § 46-16-215, MCA. Given the alleged statutory violation, the issue of whether certain facts in the affidavit should be excised is a question of law which we review *de novo*. *Cf. State v. Robinson*, 2003 MT 364, ¶ 7, 319 Mont. 82, ¶ 7, 82 P.3d 27, ¶ 7 (this Court reviews a district court's denial of a motion to dismiss *de novo* as a question of law). The issue of whether a finding of probable cause to charge an offense is reviewed for abuse of discretion, as suggested by the official comments to § 46-11-201, MCA, or *de novo*, as suggested by the concurring opinion, is not presented by the facts of this case.

¶21 This Court reviews a district court=s denial of a motion to sever counts into separate trials for abuse of discretion. *State v. Yecovenko*, 2004 MT 196, ¶ 17, 322 Mont. 247, ¶ 17, 95 P.3d 145, ¶ 17.

¶22   This Court will use its inherent power of common law plain error review sparingly, on a case-by-case basis, only in those cases that implicate a criminal defendant's fundamental constitutional rights, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.  *State v. Finley* (1996), 276 Mont. 126, 137-38, 915 P.2d 208, 215, *abrogated in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21.

¶23   A district court's determination of a defendant's future ability to pay restitution is essentially a finding of fact that this Court will reverse only if it is clearly erroneous. *State v. Thaut*, 2004 MT 359, ¶ 12, 324 Mont. 460, ¶ 12, 103 P.3d 1012, ¶ 12.

¶24   This Court reviews a district court's criminal sentence for legality only.  *State v. Eaton*, 2004 MT 283, ¶ 11, 323 Mont. 287, ¶ 11, 99 P.3d 661, ¶ 11.

DISCUSSION

ISSUE ONE

¶25   **Did the District Court err in not dismissing charges of theft in Counts I and III because the affidavit in support of the information did not allege independent admissible evidence that Holt exercised unauthorized control over the money he allegedly stole?**

¶26   Holt did not argue in the District Court, and does not argue here, that the affidavit supporting the charges in Counts I and III states insufficient facts to establish probable cause that he was guilty of theft.  While he asserts pursuant to *State v. Thompson*, 243

8

Mont. 28, 792 P.2d 1103, that the charges must be dismissed, his real argument is that the charges must be dismissed because the affidavit contains evidence that must be excised, and without this evidence the affidavit fails to establish probable cause. According to Holt, the affidavit contains no evidence aside from his own statements to prove that he took the missing money without authorization, which is a required element of the offense of theft. Section 45-6-301(1)(b), MCA. He contends his statements are inadmissible pursuant to § 46-16-215, MCA.[2] Thus, Holt argues that his statements must be excised from the affidavit, and when this is done, nothing remains showing that he took the money without authorization.

¶27 The State counters that Holt's motions were premature because the case had not yet gone to trial. The State argues that § 46-16-215, MCA, does not apply to probable cause determinations, and that when Holt's motion was made only probable cause that he committed the crime was necessary. *Thompson*, 243 Mont. at 30, 792 P.2d at 1105. Finally, the State cites *State v. Nichols*, 1998 MT 271, ¶ 4, 291 Mont. 367, ¶ 4, 970 P.2d 79, ¶ 4, wherein this Court held that a pretrial motion to dismiss for alleged insufficiency of the evidence was premature because such a challenge can only be made after the State has had the opportunity to present all of its evidence.

¶28 A showing of a mere probability that a defendant committed the offense charged is sufficient to establish probable cause to file an information. The District Judge is to use common sense to determine whether probable cause exists. *See* § 46-11-201(2), MCA;

---

[2] Section 46-16-215, MCA, provides: "Before an extrajudicial confession of the defendant to the crime charged may be admitted into evidence, the prosecution shall introduce independent evidence tending to establish the commission of the crime charged."

9

*Thompson,* 243 Mont. at 30, 792 P.2d at 1105. The affidavit in support of the Information, which includes Holt's incriminating statements, contains sufficient information to establish probable cause that Holt stole the money as alleged in Counts I and III.

¶29    It is not required that information in the affidavit supporting a charge, which might later be found inadmissible at trial, be excised before a determination of probable cause is made. If at trial, because of the requirements of § 46-16-215, MCA, the State could not prove its case against Holt with admissible evidence, Holt could move to dismiss at the close of the State's case in chief, and such motion would have to be granted. However, on the incomplete record presented here, we cannot conclude that Holt's statements would not be admissible under § 46-16-215, MCA, at a trial never held. As did the defendant in *Nichols*, Holt entered into a plea agreement that waived his right to have the charges proven beyond a reasonable doubt and to appeal a finding of guilty. He will not now be heard to argue that, if put to the test at trial, the State would have failed in its burden of proof. If he had doubts about the State=s ability to shoulder its burden of proof, Holt should have proceeded to trial. *See Nichols*, ¶ 11.

¶30    We reiterate that we do not conclude that the State did indeed have sufficient evidence to satisfy § 46-16-215, MCA. We do conclude that the State had sufficient evidence to establish probable cause to charge Holt with the thefts alleged in Counts I and III. We determine that Holt was properly charged, and further that at the time that he entered his plea it was too early in the case to hold that a motion to dismiss by Holt would of necessity be successful at the conclusion of the State's case in chief. Therefore,

Holt's motions to dismiss Counts I and III in the District Court were not well taken and the denial of such motions must be affirmed on appeal.

ISSUE TWO

¶31 **Did the District Court err in refusing to sever the trial of Count I from Counts III and IV?**

¶32 Holt first argues that if Count I was tried at the same time as Counts III and IV, the accumulation of evidence may be such that a jury would find him to be a bad person and simply convict him of something. Holt also contends that the large amount of money he is accused of stealing in Count I would turn the jury against him regarding the other counts, especially because the general public has a low opinion of lawyers. Holt then argues that a jury might use evidence of guilt on one count to convict on another count even though that evidence would be inadmissible at a separate trial on the latter count. He next argues that because substantial time elapsed between the charges, the evidence in a combined trial would constitute inadmissible other crimes evidence under Rule 404(b), M.R.Evid. Holt also argues that trying Count I with Counts III and IV would hamper his defense to Count I that his secretary took the money missing from the Dietz estate.

¶33 The District Court did not err in concluding that Holt's arguments are mere speculation not supported by the record. An unsupported, general assertion of prejudice from evidence accumulation is insufficient to require severance. *State v. Freshment*, 2002 MT 61, ¶ 30, 309 Mont. 154, ¶ 30, 43 P.3d 968, ¶ 30.

¶34 In considering whether to grant a motion to sever, the trial court must balance the possibility of prejudice to the defendant against the judicial economy which results from

11

a joint trial, and judicial economy weighs heavily in the balancing process. *State v. Richards* (1995), 274 Mont. 180, 188, 906 P.2d 222, 226-27. Prejudice from the jury being unable to keep evidence separate will not be found when the evidence is simple, distinct, and straight forward. *Richards*, 274 Mont. at 189, 906 P.2d at 227. The burden of showing prejudice is on the defendant. *Richards*, 274 Mont. at 188, 906 P.2d at 227. Holt's allegation that the amount of money he allegedly took in Count I could make him appear to be a bad person to the jury is mere speculation unsupported by the record. Holt only refers to a quote from a law review article stating that in general Americans do not respect the legal profession. This reference is insufficient to establish that he would be prejudiced by trying the charges in question together. Also, Holt provides no support for his allegation that because his secretary is not involved in Counts III and IV a jury is unlikely to accept that she took the money alleged missing in Count I. The evidence concerning Count I is easily distinguishable from that in Counts III and IV, and considering the present circumstances we decline to hold the District Court in error for finding that the jury, acting under proper instructions, would be able to consider the charges separately.

¶35 The District Court did not abuse its discretion in refusing to sever Count I from the remaining counts.

ISSUE THREE

¶36 **Must this Court exercise its plain error jurisdiction and conclude Holt may withdraw his *nolo contendere* plea?**

¶37 Holt argues that we should exercise our plain error jurisdiction and determine his

*nolo contendere* plea was not voluntary, knowing and intelligent and order that he may withdraw his plea.

¶38    Holt recognizes that a request to withdraw a guilty plea must be first raised in District Court. *State v. Butler* (1995), 272 Mont. 286, 292, 900 P.2d 908, 912. Despite this, he argues that his failure to first raise this issue in District Court is excused by our decision in *State v. Wright*, 2001 MT 282, 307 Mont. 349, 42 P.3d 753. Holt contends that the issue in *Wright* was whether the defendant entered into a written plea agreement voluntarily, and thus this issue should be raised on direct appeal.

¶39    In *Wright*, the defendant entered a guilty plea and later filed a petition for post-conviction relief. *Wright*, ¶ 1. He did not file a direct appeal before filing his petition for post-conviction relief, which alleged ineffective assistance of counsel. *Wright*, ¶¶ 8, 11. The issue in *Wright* concerned the proper method by which a defendant may raise an ineffective assistance of counsel claim; not whether the defendant's guilty plea was voluntary. *Wright*, ¶ 19. As Holt made no motion to withdraw his plea in District Court, withdrawal of the plea is not properly an issue before this Court.

¶40    However, for two reasons, Holt asks us to order that he may withdraw his *nolo contendere* plea based on plain error.

¶41    As the theft alleged in Count I may have occurred prior to the time that statutory provisions allowing a sentence to be reduced for good behavior were repealed,[3] Holt argues had he agreed to be sentenced to inmate status on Count I, rather than on Count

---

[3] *See* § 53-30-105, MCA (1995), repealed by Chapter 372, Sections 12(2), 13, Laws of 1995.

IV, he may have earned good time and discharged the Count I sentence sooner than the sentence he agreed to on Count IV. He says that he was not made aware of the possibility of good time credit on Count I by either the written agreement he signed or the District Court, and thus he did not enter the plea agreement knowingly. Therefore, Holt urges this Court to exercise plain error review and order that he be allowed to withdraw his *nolo contendere* plea.

¶42 Holt at no time presented the good time issue to the District Court by a motion to withdraw his plea, or other motion or petition. Whether a motion to withdraw a plea should be granted is a fact intensive determination. *See State v. Lone Elk*, 2005 MT 56, 326 Mont. 214, 108 P.3d 500. It would require pure speculation for this appellate Court to determine whether good time would have been available to Holt, if the County Attorney would have agreed to a prison sentence on Count I rather than Count IV, if Holt would not have entered the plea agreement had he considered the possibility of good time on Count I, or if the District Court would have accepted the plea under such circumstances. We determine that Holt's claim in this Court that he may have been able to earn good time does not implicate his fundamental constitutional rights, that failure to review his claimed error will not result in a manifest miscarriage of justice, will not leave unsettled the question of the fundamental fairness of the proceedings, and will not compromise the integrity of the judicial process. *Finley*, 276 Mont. at 137, 915 P.2d at 215.

¶43 The plea agreement in question provided that if the District Court did not sentence Holt as agreed, he could withdraw his plea. The District Court attached conditions to the

14

suspended portions of the sentence not mentioned in the plea agreement. Holt argues this Court should treat his "Motion to Correct Sentence" in the District Court as a motion to withdraw his plea. He urges us to exercise plain error jurisdiction, find the plea agreement was violated, and order that he may now withdraw his plea. Assuming, *arguendo,* that the substance of his "Motion to Correct Sentence" was a motion to withdraw his plea, which it is not, this Court would only review this claim on the basis of plain error. Again, we conclude that plain error review is not appropriate under the circumstances presented in the record and decline to further consider Holt's argument that this Court order he be allowed to withdraw his *nolo contendere* plea.

ISSUE FOUR

¶44 **Did the District Court err by not making an informative inquiry into Holt's ability to pay restitution?**

¶45 As noted above in ¶¶ 16-18, the District Court heard testimony concerning Holt's ability to pay restitution, and found that he was of an age where he could be employed, was in good health, and was well-educated. The PSI indicated that he had recently been self-employed as a handyman and a chef. After considering his assets and his substantial debts, the District Court ordered Holt to pay restitution. Holt did not contemporaneously object to the condition in the judgment ordering restitution. For the first time on appeal, he disagrees with the District Court's conclusion and argues the record does not show that he had an ability to pay restitution.

¶46 Generally, this Court will not address an argument or issue where the appellant failed to contemporaneously object or otherwise raise the issue in the district court. *State*

15

*v. Todd*, 2005 MT 108, ¶ 19, 327 Mont. 65, ¶ 19, 111 P.3d 677, ¶ 19.  To avoid this rule, Holt cites *State v. Brister*, 2002 MT 13, ¶ 16, 308 Mont. 154, ¶ 16, 41 P.3d 314, ¶ 16, which in turn cites *State v. Lenihan* (1979), 184 Mont. 338, 602 P.2d 997, for the proposition that this Court will review a sentence in a criminal case to which no objection is made at the time of sentencing, if it is alleged that the sentence is illegal or exceeds statutory mandates.  *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000.

¶47     In determining whether to order Holt to pay restitution, the District Court was required to consider whether Holt was financially able to pay restitution.  *State v. Mikesell*, 2004 MT 146, ¶ 26, 321 Mont. 462, ¶ 26, 91 P.3d 1273, ¶ 26 (citing *State v. Farrell* (1984), 207 Mont. 483, 492-93, 676 P.2d 168, 174).  Holt only challenges the adequacy of the District Court's inquiry into his ability to pay restitution, and its determination that he could pay.  While he challenges the District Court's conclusions made from the information produced at the hearing, he makes no allegation that the District Court acted illegally because it did not hear and take into consideration information concerning his ability to pay.  Thus, he makes no allegation on appeal that his sentence is illegal, as required by *Lenihan.*  As Holt's challenge to the restitution order does not fall within the *Lenihan* exception, we will not consider it further.

ISSUE FIVE

¶48     **Did the District Court err in imposing conditions on Holt's suspended sentence prohibiting his possession or consumption of alcohol and prohibiting him from establishing a checking or credit card account?**

¶49     Holt argues that the condition of his suspended sentence related to alcohol has no

16

logical correlation to the crimes for which he was sentenced, and a legal sentence requires such correlation. He cites *State v. Lucero*, 2004 MT 248, ¶ 30, 323 Mont. 42, ¶ 30, 97 P.3d 1106, ¶ 30, in support of his argument. Holt contends that, since there is no evidence that the crimes for which he was sentenced had any connection to alcohol possession or consumption, condition two of his sentence relating to alcohol is illegal and should be stricken.

¶50    Holt also argues that condition eleven of his sentence, stating that he cannot establish a checking or credit account, should be stricken. He concedes that this condition may seem reasonable in light of the crimes for which he was sentenced; however, he argues that this condition will actually hinder rather than help his rehabilitation. In support of this argument, he cites to *State v. Herd*, 2004 MT 85, 320 Mont. 490, 87 P.3d 1017.

¶51    In considering what conditions of sentence can be imposed, we have previously explained:

> As we held in *State v. Ommundson,* 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11, in order to be "reasonably related to the objectives of rehabilitation and protection of the victim and society," . . . , a sentencing limitation or condition must have some correlation to the underlying offense for which the defendant is being sentenced.

*Lucero*, ¶ 30. There is no evidence in the record that alcohol contributed to the offenses in question, and the State provides no support for this condition other than conjecture that Holt may be more likely to engage in similar misconduct in the future if he uses alcohol. We conclude that there is no correlation between alcohol and the crimes for which Holt was sentenced. Condition two must be stricken from the judgment.

17

¶52    In considering condition eleven, that Holt not be allowed to establish a checking or credit account, there is a correlation between this condition and the crimes for which Holt was sentenced.   Holt"s argument that this condition will hurt rather than help his rehabilitation might be brought before the Sentence Review Division, but its imposition is not improper.

CONCLUSION

¶53    For the foregoing reasons, condition two of the judgment relating to alcohol possession and consumption is ordered stricken from the judgment.  The remainder of the judgment is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson concurs.

¶54    I concur in the Court's resolution of this case.  I write separately for the primary purpose of suggesting that we address inconsistent precedents regarding the standard of review.

### Standard of Review

¶55 Our jurisprudence in this area of the law has not been consistent. While I reach the same result as does the Court, I write separately to suggest that these kinds of cases would be better analyzed under a uniform standard of review. In addressing Issue One—the District Court's denial of Holt's motion to dismiss Counts I and III—the Court uses a *de novo* standard of review. The Court cites *State v. Robinson*, 2003 MT 364, ¶ 7, 319 Mont. 82, ¶ 7, 82 P.3d 27, ¶ 7, as authority for that standard of review. While that was the standard of review utilized in *Robinson*, unlike the case *sub judice*, the issue there did not involve determining whether counts in the information should be dismissed because probable cause for filing those counts was not set out in the affidavit supporting the motion for leave to file information. Rather, the motion to dismiss in *Robinson* was grounded in a legal question—i.e., whether Robinson's statements to a police officer constituted "fighting words" and were therefore not constitutionally protected speech. *Robinson*, ¶ 2. *Robinson* simply does not stand for the proposition that "the issue of whether certain facts in the affidavit should be excised is a question of law," as the Court here suggests. Moreover, the issue of excising facts from an affidavit simply was not discussed in *Robinson*.

¶56 We have utilized two different standards in reviewing a district court's grant or denial of a motion to dismiss an information on the ground that the supporting affidavit fails to establish probable cause. The standard of review used seems to depend largely on whether the alleged insufficiency in the affidavit is grounded in an underlying question of law or is based on an alleged failure to set forth sufficient factual data to support the

charge. Our cases are not always clear in the application of each standard; indeed, sometimes we are inconsistent.

¶57 By way of example, *State ex rel. Bell v. District Court* (1971), 157 Mont. 35, 482 P.2d 557, was decided on the basis of supervisory control. No standard of review was articulated, but it appears that the trial court's decision was reviewed *de novo*. The decision addressed two issues regarding the State's affidavit in support of its application for leave to file an information. The first was an issue of law—whether the affidavit was sufficient for the district court to determine whether it had jurisdiction. *State ex rel. Bell*, 157 Mont. at 37, 482 P.2d at 558. The second was a factual issue—whether the affidavit contained sufficient facts to establish probable cause for filing the information, given that it did not set forth the time and place of the alleged offense. *State ex rel. Bell*, 157 Mont. at 37-39, 482 P.2d at 558-59. In *State ex rel. Murphy v. McKinnon* (1976), 171 Mont. 120, 127, 556 P.2d 906, 910, also a supervisory control proceeding, this Court did not articulate a standard of review, but it is obvious that the Court utilized *de novo* review in determining that the affidavit supporting the motion for leave to file information lacked probable cause. The issue involved both legal and factual sufficiency—whether on the facts set forth, and given the statutory elements of the crime of deliberate homicide, Murphy could properly be charged with that offense. *State ex rel. Murphy*, 171 Mont. at 123-27, 556 P.2d at 908-10.

¶58 *State v. Matthews* (1979), 183 Mont. 405, 600 P.2d 188, a direct appeal, involved a question of law. Specifically, this Court considered whether the district court had jurisdiction over an action brought under the Montana Campaign Finances and Practices

Act, where the affidavit supporting the motion for leave to file information did not state that the case was first offered to the county attorney. *Matthews*, 183 Mont. at 406, 600 P.2d at 189. This Court examined the district court's decision to dismiss the information *de novo*, but without articulating that standard of review. *Matthews*, 183 Mont. at 407-09, 600 P.2d at 189-90.

¶59 In *State v. Riley* (1982), 199 Mont. 413, 423, 649 P.2d 1273, 1278, a direct appeal, this Court addressed a claim that affidavits supporting a motion for leave to file information lacked sufficient factual data to support a charge of deliberate homicide. In doing so, the Court appears to have utilized an abuse of discretion standard, citing *State v. Troglia* (1971), 157 Mont. 22, 482 P.2d 143, for the proposition that "the reviewing court must give special deference to judicial probable cause determinations." *Riley*, 199 Mont. at 423, 649 P.2d at 1278. The citation to *Troglia* was imprecise, to say the least, because that decision did not assess probable cause for filing an information, but rather, probable cause for issuance of a search warrant. *Troglia*, 157 Mont. at 27, 482 P.2d at 146. Indeed, the *Riley* Court observed that *Troglia* was grounded in *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, a seminal search and seizure case. *Riley*, 199 Mont. at 423, 649 P.2d at 1278. Nonetheless, the *Riley* Court simply dumped both types of probable cause determinations into the same hopper. *Riley*, 199 Mont. at 423, 649 P.2d at 1278.

¶60 In *State v. Bradford* (1984), 210 Mont. 130, 683 P.2d 924, a direct appeal, this Court took some liberty with the "special deference" holding of *Riley*. We cited *Riley* for the proposition that "the determination whether a motion to file an information is

21

supported by probable cause is left to the sound discretion of the trial court." *Bradford*, 210 Mont. at 139, 683 P.2d at 929. Pursuant to this restatement of *Riley*, we reasoned "[t]hus the scope of review is one of detecting abuse in the exercise of that discretion." *Bradford*, 210 Mont. at 139, 683 P.2d at 929. The issue in *Bradford* was whether the facts alleged in the affidavit were sufficient under controlling case law to establish probable cause. *Bradford*, 210 Mont. at 138-40, 683 P.2d at 928-29. Thus, both factual and legal issues were decided using an abuse of discretion standard.

¶61 We followed this standard of review in *State v. Buckingham* (1989), 240 Mont. 252, 783 P.2d 1331, where we reviewed the district court's decision regarding the factual sufficiency of the affidavit. *Buckingham*, 240 Mont. at 255-56, 783 P.2d at 1334 (citing *Bradford*, 210 Mont. at 139, 683 P.2d at 929). Likewise, *State v. Ramstead* (1990), 243 Mont. 162, 793 P.2d 802, involved a question of factual sufficiency and we applied the abuse of discretion standard. *Ramstead*, 243 Mont. at 166, 793 P.2d at 804 (citing *Buckingham*, 240 Mont. at 256, 783 P.2d at 1334; *Bradford*, 210 Mont. at 139, 683 P.2d at 929). In *State v. Arrington* (1993), 260 Mont. 1, 858 P.2d 343, we also applied the abuse of discretion standard in addressing a question of factual sufficiency of an affidavit in support of a motion for leave to file information. *Arrington*, 260 Mont. at 7-8, 858 P.2d at 346-47 (citing *Bradford*, 210 Mont. at 139, 683 P.2d at 929; *Buckingham*, 240 Mont. at 256, 783 P.2d at 1334).

¶62 *State v. Elliott*, 2002 MT 26, 308 Mont. 227, 43 P.3d 279, involved the factual and legal question of whether, in the absence of direct proof that the baby was born alive, the facts set forth in the affidavit for leave to file information would support the charge of

22

deliberate homicide. *Elliott*, ¶¶ 23-31. We applied the abuse of discretion standard in reviewing both the factual and legal issues, and ultimately affirmed the district court's denial of Elliot's motion to dismiss for lack of probable cause. *Elliott*, ¶¶ 27, 31 (citing *Arrington*, 260 Mont. at 7, 858 P.2d at 346).

¶63    In *State v. Thompson* (1990), 243 Mont. 28, 33, 792 P.2d 1103, 1107, without articulating our standard of review, we affirmed the trial court's decision granting the motion to dismiss the information for lack of probable cause, using what appears to be *de novo* review. The underlying problem seemed to include questions of both factual sufficiency and legal sufficiency—i.e., whether the statutes charged fit the conduct complained of. *Thompson*, 243 Mont. at 30-33, 792 P.2d at 1105-07. Similarly, in *State v. Smith*, 2004 MT 191, 322 Mont. 206, 95 P.3d 137, we used a *de novo* standard in reviewing the trial court's denial of a motion to dismiss a count of the information. *Smith*, ¶ 12. In *Smith*, the question was whether the affidavit was insufficient in failing to state the required elements of the offense charged. *Smith,* ¶¶ 20, 27. We concluded that in failing to allege a critical fact—the identity of the intended victim, Hernandez—the affidavit was legally insufficient to support the crime charged. *Smith*, ¶¶ 30-31. Although involving both factual and legal insufficiency, we cited, as support for our *de novo* standard of review, *State ex rel. Booth v. Montana*, 1998 MT 344, ¶ 10, 292 Mont. 371, ¶ 10, 972 P.2d 325, ¶ 10, which in turn cited *State v. Bowles* (1997), 284 Mont. 490, 492, 947 P.2d 52, 53. *Smith*, ¶ 12. While *State ex rel. Booth* and *Bowles* both involved motions to dismiss, neither was grounded in a failure of the affidavit to establish probable cause. *State ex rel. Booth*, ¶¶ 7-9 (whether charge was barred as being the result of same

23

transaction and double jeopardy); *Bowles*, 284 Mont. at 492-93, 947 P.2d at 53 (whether an earlier DUI conviction would support the current felony DUI charge).

¶64 Finally, in *State v. Villanueva*, 2005 MT 192, 328 Mont. 135, 118 P.3d 179, we again addressed the issue of whether the State's charging documents established sufficient probable cause. *Villanueva*, ¶ 2. Our articulated standard of review referred to the grant or denial of a motion to dismiss in a criminal case as being a question of law—i.e., a *de novo* standard—citing *State v. Reynolds*, 2004 MT 364, 324 Mont. 495, 104 P.3d 1056. *Villanueva*, ¶ 9. *Reynolds* dealt with the issue of whether the information should have been dismissed on the grounds of entrapment as a matter of law. *Reynolds* ¶¶ 2, 7, 10. In *Villanueva*, the insufficiency alleged was legal insufficiency. *Villanueva*, ¶¶ 10-12, 18. The first part of the issue addressed involved whether Villanueva was a "sexual offender" as a matter of law. *Villanueva*, ¶¶ 2, 16, 17. Similarly, as to the second part of the issue addressed—whether the information and supporting affidavit failed to establish sufficient probable cause to believe that Villanueva was required to register as a sex offender—the underlying question was really one of statutory interpretation. *Villanueva*, ¶¶ 2, 18-22.

¶65 Based upon the foregoing, I suggest that in assessing the sufficiency of probable cause in an affidavit supporting a motion for leave to file information, it is often difficult to categorize the question as being purely one of factual sufficiency (to which we apply an abuse of discretion standard of review) or purely one of legal sufficiency (to which we apply a *de novo* standard of review). Moreover, however we tend to categorize the issue (and that may often be simply in the eye of the beholder), we are not consistent in our

application of a standard of review. Indeed, we have applied the *de novo* standard of review in cases involving questions of both factual and legal sufficiency, see, e.g., *State ex rel. Bell*, *State ex rel. Murphy, Thompson,* and *Smith*, as well as in cases involving only a question of legal sufficiency, see, e.g., *Matthews* and *Villanueva*. We have used the abuse of discretion standard of review in cases involving only a question of factual sufficiency, see e.g., *Riley*, *Buckingham*, *Ramstead*, and *Arrington*, and we have also used this standard of review in cases involving questions of both factual and legal sufficiency, see e.g., *Bradford* and *Elliot*.

¶66    I further suggest—and the conclusion I am driving toward—is that we should end the inconsistent use of these two standards of review in this area of our jurisprudence. Further, I suggest that we stop categorizing these cases simply as questions of either factual sufficiency or legal sufficiency. In point of fact, every case that requires assessment of whether the affidavit supporting the motion for leave to file information contains sufficient facts to establish probable cause to support the crime or crimes charged, contains both a factual component and a legal component. Each case involves a set of unique facts and, as a matter of law, the recitation of some minimum quantum of those facts in the affidavit supporting the motion for leave to file information is necessary to establish the probability that the accused committed the crime or crimes to be charged. *See Arrington*, 260 Mont. at 6-7, 858 P.2d at 346; *Elliott*, ¶ 26.

¶67    It is simply impossible to determine whether probable cause has been established in either a factual or legal vacuum. In reality, this assessment is a mixed question of law and fact, which we review *de novo*. *State v. Grixti*, 2005 MT 296, ¶ 15, 329 Mont. 330,

¶ 15, 124 P.3d 177, ¶ 15; *State v. Favi*, 2005 MT 288, ¶ 10, 329 Mont. 273, ¶ 10, 124 P.3d 164, ¶ 10. We have, with minor exceptions not important here, applied the *de novo* standard in criminal cases where we consider mixed questions of law and fact, only in the context of ineffective assistance of counsel cases (see, e.g., *Grixti*, ¶ 15) and voluntariness of plea cases (see, e.g., *Favi*, ¶ 10). Nevertheless, given the nature of the assessment of both factual and legal issues required in determining the sufficiency of the probable cause affidavit, and given our inconsistent use of two different standards of review of trial court decisions on this issue, it makes sense to utilize one consistent *de novo* standard of review that encompasses both the factual and legal components of the problem.

¶68 I would hold in this case, and henceforth, that our standard of review where the question is whether the affidavit in support of a motion for leave to file an information directly in the district court is legally or factually sufficient, is a mixed question of law and fact that we will examine *de novo*. Furthermore, I would overrule the cases discussed above to the extent that they stand for a different standard of review.

¶69 I would apply this new standard of review in the case *sub judice*, as it typifies how the assessment of the sufficiency of probable cause involves both factual and legal components. Holt argues that, as a matter of law, his statements against interest cannot be used to establish probable cause absent corroboration. Holt also argues that absent his statements against interest, the affidavit does not include sufficient facts to establish probable cause for the crimes of theft charged. In my view, Holt is wrong for the reasons set forth in the Court's Opinion.

### Restitution Order

¶70    Although I have serious reservations about the consistency of our jurisprudence applying the *Lenihan* exception, I am satisfied that Holt did not articulate a persuasive argument on appeal which would demonstrate that his sentence in this case falls within the seminal rule set forth in *Lenihan*.  Moreover, if Holt has complaints as to the equity of the District Court's sentence, those can be addressed by way of sentence review.

### Corpus Delicti and Res Gestae

¶71    One final matter needs mention.  The parties in their briefs argue the *corpus delicti* doctrine.  In *State v. Hansen,* 1999 MT 253, 296 Mont. 282, 989 P.2d 338, we urged the practicing bar and the trial courts not to use the *corpus delicti* and *res gestae* doctrines in future cases.  Following a lengthy discussion, we observed that such terms are vague, imprecise, and have been misinterpreted and misused in the past.  *Hansen*, ¶ 96.  Accordingly, we stated that henceforth we will review claims of error in the admission of evidence by determining whether the evidence was admissible under some provision of the Montana Code Annotated or under the Montana Rules of Evidence.  *Hansen*, ¶ 96.  Pursuant to *Hansen*, I believe we should reiterate that we reject the use of these terms whenever litigants present them for substantive purposes in appeals to this Court.

¶72    I concur.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray joins in the concurrence of Justice James C. Nelson.

/S/ KARLA M. GRAY